[Crim. No. 4486. In Bank. Sept. 15, 1943.]

THE PEOPLE, Respondent, v. GLENARD BROWN, Appellant.

Charles A. Tuttle for Appellant.

Robert W. Kenny, Attorney General, and T. G. Negrich, Deputy Attorney General, for Respondent.

THE COURT.—Defendant was accused by information of murdering Ada B. Turner in Placer County on September 27, 1942. He entered pleas of not guilty and not guilty by reason of insanity. A jury found against him on both pleas. The verdict on the general issue determined the homicide to be of

the first degree and carried no recommendation. This is an automatic appeal from the judgment imposing the death sentence.

The evidence as summarized in defendant's opening brief adequately reveals the circumstances surrounding the homicide.

On September 27, 1942, Mrs. Ada Turner, a widow seventy-eight years of age, was living alone at her home in Colfax, Placer County, California. She was seen that day in her yard by neighbors. She was seen in the rear yard of her home with defendant on the same day, and defendant was carrying a gun.

The body of Mrs. Turner was discovered in the basement of her home the following morning, and shortly thereafter, county and state peace officers were at the scene. The basement where the killing occurred showed blood on the floor, walls and furniture. There were large smears of blood on the floor indicating that the body of Mrs. Turner had been dragged about. Mrs. Turner's body was practically nude.

Dr. Smith made a post-mortem examination of the body and examined all wounds, as well as the vaginal tract. Eight knife wounds were found; also one wound on the face made by a blunt instrument. The blow producing this last wound was of sufficient force to fracture the jaw bone. The cause of death was hemorrhage due to multiple lacerations. There was no evidence of trauma in the vaginal tract; the vagina was dry and there was no evidence of rape.

On October 1, 1942, defendant made a statement to the district attorney and peace officers. In this statement defendant admitted the killing and asserted repeatedly that he did not know why he had done it. The rifle and knife used by defendant in the killing were found by officers at places designated by defendant.

Defendant testified that he drank large quantities of intoxicating liquors the day of the killing; that he was "rum-dum" as a result of such drinking; and that he was eighteen years of age at the time of the killing.

There are other circumstances tending to connect defendant with the commission of the homicide but we need not specify them in view of his admission that he committed the crime. Defendant does not challenge the sufficiency of the evidence to support the judgment but contends that two instructions given to the jury were prejudicially erroneous. He first urges

that the trial court erred in giving the following instruction: "Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, where she resists, but her resistance is overcome by force or violence, or where she is prevented from resisting by threats of great and immediate bodily harm accompanied by apparent power of execution. You are further instructed that rape and attempt to commit rape are felonies."

In light of the testimony of the autopsy surgeon, referred to above, that his examination of the aged victim disclosed the vaginal tract to be free of trauma or other evidence of rape, defendant contends that the giving of the foregoing instruction constituted prejudicial error particularly when coupled with the district attorney's opening statement to the jury that in killing the deceased defendant was "actuated by a sex motive." Defendant inquires, "Why should the court give a 'rape' instruction, unless rape is involved in this murder case . . . ?" He concludes that "with the giving of that instruction the defendant was thereby deprived of any chance of the jury fixing his sentence at imprisonment for life."

Section 189 of the Penal Code declares that "All murder which is perpetrated by means of poison, or lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing, or which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, or mayhem, is murder of the first degree; . . . ." There is evidence in the record from which the jury reasonably might have inferred for one or more of the reasons designated in the statute that the homicide was of the first degree. We shall, however, confine our discussion to the evidence tending to support the propriety of the instruction here challenged. The battered and lacerated condition of the seventy-eight year old victim, coupled with the evidence of the practically nude state of her body, would support a conclusion that the homicide, within the meaning of the statute, had been perpetrated in an attempt to commit rape, which attempt was frustrated either by the struggle of the victim or other extraneous and deterring circumstance. The absence from the vaginal tract of trauma or other evidence of rape, stressed by defendant, indicates only that a rape was not actually perpetrated. It does not establish that rape was not intended or attempted. Under the entire evidence, the jury reasonably could have

concluded that such an attempt had been made. It was not improper, and certainly not prejudicial, therefore, for the district attorney to refer in his opening statement to a "sex motive" or for the court to give the above challenged instruction.

■ Moreover, the court further charged the jury that "If any instruction given you is applicable only in the event a particular situation or state of facts exists, and you should find that no such situation or state of facts exists, then you should disregard such instruction in your deliberations, nor will you consider the giving of any instruction as an indication from the court that an offense may or may not have been committed." By this instruction the jury was properly admonished to disregard the rape instruction if in its deliberation from the court that an offense may or may not have been not perpetrated in an attempt to commit rape.

■ Defendant's second and final contention is directed at the following instruction:

"The defendant has been examined as a witness on his own behalf. This it is his right to be, and the jury will consider his testimony as they will consider that of any other witness examined before you. It is proper, however, for the jury to bear in mind the situation of the defendant, the manner in which he may be affected by your verdict, and the very great interest he must feel in it, and it is proper for the jury to consider whether his position and interest may not affect his credibility and color his testimony, but you are to weigh it fairly and give it such credit as you think it ought to receive."

Defendant cites *People* v. *Maughs*, 149 Cal. 253, 262-263 [86 P. 187], to support his claim that prejudicial error resulted from the giving of this instruction. The instruction involved in the Maughs case differed materially from the one here given. The instruction in the cited case directed the jury's attention to the defendant's interest in the outcome of the trial by stressing "the consequences, inducements, and temptations which would ordinarily influence a person in his situation." Nowhere did the Maughs instruction inform the jury, as did the instruction here given, to "consider his [defendant's] testimony as they will consider that of any other witness examined before you" and "to weigh it fairly and give it such credit as you think it ought to receive." In the later case of *People* v. *Ryan*, 152 Cal. 364, 369 [92 P. 853],

it is declared that an instruction containing language equivalent to that just above quoted from the instruction in this case "is not so objectionable" as the instruction condemned in the Maughs case, adding that "It states to the jury a rule regarding the consideration of the defendant's testimony, which every intelligent man upon the panel would doubtless keep in mind, without being reminded of it by the court, and, aside from the fact that it directs attention particularly to a single witness who is a party to the action, it would be covered by the rule laid down in *People* v. *Wardrip,* 141 Cal. 229, 231 [74 P. 744]" and other cited cases to the effect that an instruction on a commonplace matter within the general knowledge of the jurors is not reversible error.

In *People* v. *Bartol,* 24 Cal.App. 659, 665 [142 P. 510], an instruction was given which, as here, informed the jury that it was proper "to consider whether the *position and interest* of such defendant may not affect her credibility and color her testimony." (Italics ours.) In declining to reverse the judgment because of such instruction, the court there declared that "As sensible men, the jurors would take that circumstance into consideration in weighing the testimony of defendant and they needed no such admonition from the court. And it is perfectly apparent that they had a legal and moral right to consider 'the position and interest of the defendant' in determining her credibility. That is one of the tests that must be applied to all witnesses. And, of course, without any intimation from the court, the jury understood the 'position' of defendant and knew her 'interest' in the outcome of the case. The vice of the instruction is, though, manifestly, in calling particular attention to the testimony of the defendant. The danger of such practice lies in the possibility that the jury may infer that the judge of the court intends to discredit the testimony of the defendant. The principle covered by the instruction should be given in general terms and the jury should be left entirely without suggestion of its application to any particular witness. . . . It is to be observed that the instruction here is much less objectionable than the one considered in the Maughs case. There the court referred to the 'inducements, consequences, and temptations' of the defendant. Here it is more nearly a mere commonplace, the 'position and interest' of the defendant." This court denied a hearing in the Bartol case. (See, also, *People* v. *Will,* 79 Cal.App. 101, 116 [248 P. 1078].)

The vice of the instruction here given is in calling particular attention to the testimony of the defendant. The rule covered by the instruction should be stated in general terms and the jury should be left without suggestion of its application to any particular witness. (*People* v. *Bartol, supra,* 665; see, also, *Nichols* v. *Pacific Electric Ry. Co.,* 178 Cal. 630, 632 [174 P. 319]; *Juchert* v. *Tenent,* 126 Cal.App. 216, 217 [14 P.2d 617]; *Houghton* v. *Pickwick Stages,* 87 Cal.App. 669, 674-677 [262 P. 770].) In the present case the trial court did give such a general instruction, charging the jury that ''In determining the credibility of any witness . . . you may also consider . . . their interest or absence of interest in connection with the results of the issues before you; . . . . ''

■ The Bartol case further distinguishes the Maughs case, relied on by defendant, by pointing out that it was decided prior to the adoption of section 4½ of article VI of the Constitution. Under this section ''No judgment shall be set aside . . . on the ground of misdirection of the jury . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.'' We cannot say that a miscarriage of justice resulted in this case from that portion of the challenged instruction which singled out defendant's testimony. The record contains substantial evidence tending to connect defendant with the homicide. As stated above, on the day of the homicide the deceased was seen in the rear yard of her home with defendant, who was carrying a rifle. Upon his subsequent arrest defendant directed officers to the places where he had concealed the rifle and knife used in the homicidal assault. Defendant admitted that he had perpetrated the crime and it is not claimed the confession was improperly obtained. In addition to the instruction now under consideration the trial court correctly directed the jury on the principle announced in the challenged instruction. The jury also was instructed that it was the exclusive trier of the facts. Under the evidence and the charge as a whole, prejudicial error did not result from the improper reference in a single instruction to defendant's ''position and interest'' in the case.

The judgment is affirmed.