[Crim. No. 18219. In Bank. Sept. 5, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
BOOKER T. MAYBERRY et al., Defendants and Appellants.

**COUNSEL**

George Lawrence Schraer and Michael A. Mendelson, under appointments by the Supreme Court, David B. Elefant, under appointment by the Court of Appeal, and Alan Exelrod for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, John T. Murphy, Ann K. Jensen and Clifford K. Thompson, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RICHARDSON, J.**—An information was filed charging Franklin Mayberry and his brother Booker T. Mayberry with various offenses against the prosecutrix (Miss Nancy B.). Booker was charged with assault with intent to commit rape (Pen. Code, § 220). Franklin was charged with

kidnaping (Pen. Code, § 207), rape by means of force and threat (Pen. Code, § 261, subds. 2 & 3), assault by means of force likely to produce great bodily injury (Pen. Code, § 245), and oral copulation (Pen Code, § 288a). Following a joint trial, a jury found defendants guilty as charged on all counts, except that the jury found Franklin guilty of assault (Pen. Code, § 240), a lesser included offense in the alleged violation of section 245. Franklin received a jail term for the assault, and he and Booker received prison terms for the other offenses.

Defendants appeal from the judgments, contending that the prosecutrix' testimony is inherently improbable and that inadequate instructions, an improper charge, and certain other matters also require reversal of the judgments. We have concluded that the court erred in refusing to give instructions concerning mistake of fact and that the error requires reversal of the rape and kidnaping convictions. In all other respects the judgments will be affirmed.

Miss B., the prosecutrix, testified to the following effect:

About 4 p.m. on July 8, 1971, she left her apartment in Oakland to walk to a nearby grocery store. As she passed a liquor store, she heard "catcalls" from some men, and Franklin, whom she had never seen before, grabbed her arm. She dug her fingernails into his wrist, and he released her. After she turned to leave, he kicked her, threw a bottle which struck her, and shouted obscenities at her. She remonstrated and continued on her way.

After she entered the grocery store, Franklin suddenly appeared beside her and said something to the effect that she was going to go outside with him and if she did not cooperate she would "pay for it." She replied she did not want to accompany him and looked for a store security guard but saw none. The only store personnel she observed were busy with customers and were too far away for her to gain their attention. Because of her own confusion and fear of Franklin, she accompanied him outside the store, where they remained for approximately 20 minutes. During this time Miss B. observed no one available to assist her although two women left the store in her vicinity.

Franklin, in a threatening manner, mentioned to Miss B. having sex. She rejected this, but Franklin told her she "was going to have to go with him," and, when she refused, struck her in the chest with his fist, knocking her down. Franklin directed obscenities at her, held his fist up

to her face, and told her "you are going to come with me" and added that if she did not do so he would "knock every tooth out of [her] mouth." She asked him to leave her alone, but Franklin seized her wrist and said "come on." In an attempt "to buy time," she told Franklin she wanted to purchase some cigarettes, and he agreed. Placing his hand beneath her elbow, he accompanied her to a store, approximately 100 feet away, where she purchased cigarettes for herself and Franklin. She did not explain to the clerk her predicament because she was feeling "completely beaten" and did not think the clerk would help her.

After completing the purchase, she sat on a curb, attempted to engage Franklin in conversation and smoked a cigarette. During this period, in her words, she "put on an act" and tried "to fool" Franklin, thinking that she might be able to escape. He eventually said, "we are leaving." She "tried to talk him out of it," and he became angry and, uttering an obscenity, ordered her to "get up." She complied, and he again seized her elbow and started to guide her. While walking several blocks, they passed some business establishments, but Miss B. noticed no one on the street. She did not want to accompany him but, because of fear, did not resist.

Franklin led her to an apartment house and entered ahead of her. After they entered his apartment, he barricaded the door behind them. She did not attempt to flee because, having a leg that was stiff from an arthritic condition, she could not run fast. Approximately 15 minutes of further conversation ensued during which she unsuccessfully attempted to persuade Franklin "to change his mind." Without her consent, he then engaged in several acts of sexual intercourse and oral copulation with her. During the sexual assault he struck her, and because of fear she did not physically resist his advances.

While Miss B. was in the apartment, Booker entered. As she attempted to move towards the door, Booker mumbled "want some . . . ." He thereupon seized her and dragged her towards a mattress. When she resisted, Booker threw her against the wall and struck her face with his fists. She continually attempted to reach the door but was frustrated by Booker's repeated physical restraint. During a portion of this incident Booker apparently attempted to strangle her. She finally told Franklin, who was observing the fracas, that Booker was going to kill her. Franklin thereupon stepped between Miss B. and Booker and pushed her towards the door. She broke free and left. She went to a friend's house to get aid but found no one home. She then proceeded directly to her apartment.

She immediately reported the incidents to her apartment manager, and the police were summoned.

At trial a police officer testified that around 10:40 p.m. on July 8, 1971, he went to Miss B's address in response to a kidnap-rape call and observed much bruising and swelling on her face, left arm and leg.

Franklin took the stand in his own behalf and testified as follows: he saw Miss B. about 4 p.m. on July 8, 1971, and engaged her in conversation, after which he accompanied her to the grocery and the store where she purchased cigarettes. They then walked to his home. He did not threaten her, nor did she protest but accompanied him willingly and agreed to, and did engage in, intercourse. He denied seeing Booker hit her, but recalled that Booker entered the apartment while she was there and began laughing. She looked upset, said, "I'll fix you," and left.

Booker's testimony was that when he returned to his apartment on July 8, 1971, he found Franklin and Miss B. in bed. He left the apartment and, upon his return, commenced laughing. Miss B. put her hands over her face and left. Booker denied having touched her.

In rebuttal the prosecution presented two witnesses. One described bruises on Miss B's face and arms on the night of July 8, 1971; the other testified that she noticed nothing unusual about Miss B's face on July 7, 1971, but that when the witness observed Miss B. on July 9, 1971, her face was bruised and swollen, one eye was almost shut, and her arm was bruised.

We consider defendants' numerous contentions of error, one contention asserted jointly and the others severally.

### Defendants' Claim that the Prosecutrix' Testimony is Inherently Improbable

In arguing that the prosecutrix' testimony is inherently improbable, defendants point to the facts that the prosecutrix did not report the assault in front of the liquor store to the police from a telephone that was available near the grocery store; that she did not physically resist Franklin after the initial encounter; that she failed to attempt to flee or obtain help even though there were opportunities for her to do so; that there was no evidence Franklin was armed; and that she had "a lighted

cigarette just prior to the time that [she] left [defendants' apartment]," suggesting thereby, in some way, a friendly parting.

We have previously considered the requisite quantum of evidence to meet a challenge of "improbability." ■ In *People* v. *Headlee,* 18 Cal.2d 266, 267-268 [115 P.2d 427], we noted that "To be improbable on its face the evidence must assert that something has occurred that it does not seem possible could have occurred under the circumstances disclosed." More recently, in *People* v. *Thornton,* 11 Cal.3d 738, 754 [114 Cal.Rptr. 467, 523 P.2d 267], we reaffirmed the following language from *People* v. *Huston,* 21 Cal.2d 690, 693 [134 P.2d 758]: " 'Although an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. [Citation.] To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]' "

Viewed in the light of the foregoing expressions, it cannot be said that the prosecutrix' testimony is inherently improbable. She testified that, although she was aware of the telephone by the grocery store, she did not think of it and planned to call the police from her home. She explained that she did not physically resist Franklin after the initial encounter because she was afraid of him. Although they were about the same size and there is no evidence he was armed, she had been threatened, struck, and knocked down and the jury, which had an opportunity to observe them and hear their testimony, could well have concluded that her fear was not unreasonable. She explained her failure to flee on the ground she could not run fast due to her stiff leg. Her failure to elicit help from others (e.g., persons at the grocery store) might have been deemed suspicious, but it was also susceptible to a conclusion that she was too frightened to think clearly. Her testimony that "[she] did have a lighted cigarette just prior to the time that [she] left [defendants' apartment]," which testimony is not amplified, is not significant and discloses at most an unusual circumstance.

*Booker's Claim that Court Erred in Refusing
to Give Diminished Capacity Instructions*

The court refused to give requested instructions on diminished capacity. Booker contends that the court thereby erred since the evidence, assertedly, warranted such instructions. He points to evidence of the preliminary hearing testimony of Miss B. that he "appeared to be drunk" at the time of the assault. At trial she testified that she did not form an opinion as to whether he was "under the influence of alcohol" at the time of the offense. Booker did not testify that he was intoxicated but, as noted, denied having touched Miss B.

We have previously expressed the principles controlling the giving and rejection of jury instructions. In *People* v. *Carmen,* 36 Cal.2d 768, 773 [228 P.2d 281], we held that the court erred in refusing to give requested instructions on manslaughter; we stated in part, " 'It is *elementary* that the court should instruct the jury upon every material question upon which there *is any evidence deserving of any consideration whatever.* [Citations.] *The fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereon.* [Citations.]' " We have reaffirmed the *Carmen* principles in subsequent decisions, including cases wherein the defendant complained of a failure to give instructions based on diminished capacity. (E.g., *People* v. *Castillo,* 70 Cal.2d 264, 269-270 [74 Cal.Rptr. 385, 449 P.2d 449]; *People* v. *Henderson,* 60 Cal.2d 482, 489-491 [35 Cal.Rptr. 77, 386 P.2d 677]; *People* v. *Modesto,* 59 Cal.2d 722, 729 [31 Cal.Rptr. 225, 382 P.2d 33] [overruled on other issues in *People* v. *Sedeno,* 10 Cal.3d 703, 721 (112 Cal.Rptr. 1, 518 P.2d 913), and *People* v. *Morse,* 60 Cal.2d 631, 648-649 (36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810)].) As an obvious corollary, where there is "no substantial evidence of diminished capacity" the court does not err in refusing to give instructions based on that defense. (*People* v. *Bandhauer,* 66 Cal.2d 524, 528 [58 Cal.Rptr. 332, 426 P.2d 900].) Thus instructions on diminished capacity "need not be given when the evidence of diminished capacity is minimal." (*People* v. *Carr,* 8 Cal.3d 287, 294 [104 Cal.Rptr. 705, 502 P.2d 513].)

█ Here the evidence of diminished capacity was minimal. Miss B's preliminary hearing testimony was inconsistent with her testimony at trial and was thus equivocal. No other evidence of Booker's intoxication was presented. Furthermore, there was no evidence that he was so intoxicated that he could not form an intent to commit rape. Under the circumstances the court did not err in refusing to give the instructions.

### Booker's Claim that Court Erred in Failing
### to Give Cautionary Instruction

Booker contends that the court erred in failing to give, *sua sponte*, a cautionary instruction that, since charges of sex offenses are easy to make and difficult to disprove, the prosecutrix' testimony concerning the alleged assault with intent to commit rape should be examined with caution.

Recently in *People* v. *Rincon-Pineda*, 14 Cal.3d 864 [123 Cal.Rptr. 119, 538 P.2d 247], we re-examined the propriety of such an instruction and concluded that it should no longer be given. We further concluded, however, that the trial court erred in failing to comply with prior cases that made it mandatory to give such an instruction whether or not it was requested, but that the error was not prejudicial (Cal. Const., art. VI, § 13).

■ Here also the court's failure to give the cautionary instruction in connection with the charge of assault with intent to commit rape was not prejudicial. Such an instruction was given in connection with the rape charge against Franklin, and, although the instruction related specifically to that charge, the jury was thereby apprised of the principle which has been viewed as giving rise to a requirement of caution, and it is unlikely that the jury applied a different perspective when considering the testimony of the same witness against Booker. Furthermore, the testimony of witnesses indicating that Miss B. incurred bruises on her face about the time of the assault by Booker tended to corroborate her testimony.

### Booker's Claim Regarding the Charge
### of "Great Bodily Injury"

■ Booker asserts that at the preliminary hearing the magistrate found there was no "great bodily injury" and that it was therefore error for the prosecution to include in the information a charge of such injury and for the court to submit the issue of such injury to the jury. He relies upon *Jones* v. *Superior Court*, 4 Cal.3d 660 [94 Cal.Rptr. 289, 483 P.2d 1241], and further claims that, even though the jury's finding of "great bodily injury" was stricken by the court, he was prejudiced by the errors since, assertedly, it may be inferred that the jury determined that because of the charge of such injury he was a dangerous man.

The preliminary hearing transcript is not part of the record on appeal. It is unnecessary to augment the record to include that transcript because even if it be assumed to have been error to include the "great bodily injury" charge in the information and to submit that issue to the jury, the errors were not prejudicial. (Cal. Const., art. VI, § 13; *People* v. *Watson,* 46 Cal.2d 818, 836-837 [299 P.2d 243].) The jury was instructed that, in determining whether a defendant is guilty or not, the jury must be governed solely by the evidence. In our view, it is highly improbable that the jury's verdict concerning guilt was affected by the "great bodily injury" charge.

### Booker's Other Claims

One of Booker's two remaining claims totally lacks merit. The other pertains to a minor matter that did not, by itself or in combination with the other matters complained of, result in a miscarriage of justice. (Cal. Const., art. VI, § 13.)

### Franklin's Claim that Court Erred in Refusing to Give Requested Instructions

#### A. *Mistake of Fact Instructions*

The court refused to give requested instructions that directed the jury to acquit Franklin of the rape and kidnaping if the jury had a reasonable doubt as to whether Franklin reasonably and genuinely believed that Miss B. freely consented to her movement from the grocery store to his apartment and to sexual intercourse with him. Franklin contends that the court thereby erred. The Attorney General argues that the court properly refused to give the instructions because "mistake of fact instruction[s] as to consent should be rejected as against the law and public policy."

Penal Code section 207 provides, "Every person who forcibly . . . takes . . . any person in this state, and carries him into . . . another part of the same county, . . . is guilty of kidnaping." Penal Code section 261 provides, "Rape is an act of sexual intercourse, accomplished with a female not the wife of the perpetrator, under either of the following circumstances: . . . ; 2. Where she resists, but her resistance is overcome by force or violence; 3. Where she is prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution . . . ." There is, of course, no kidnaping " 'when one, . . . with knowledge of what is taking place . . . , voluntarily . . . consents to

accompany another . . .' " (see *People* v. *Rhoden,* 6 Cal.3d 519, 526 [99 Cal.Rptr. 751, 492 P.2d 1143]), and similarly there is no rape if a female of sufficient capacity consents to sexual intercourse (see *People* v. *Nash,* 261 Cal.App.2d 216, 223 [67 Cal.Rptr. 621]; 1 Witkin, Cal. Crimes (1963) § 173, p. 165, § 288, pp. 265-267).

■ Penal Code section 26 recites, generally, that one is incapable of committing a crime who commits an act under a mistake of fact disproving any criminal intent. Penal Code section 20 provides, "In every crime . . . there must exist a union, or joint operation of act and intent, or criminal negligence." The word "intent" in section 20 means "wrongful intent." (See *People* v. *Vogel,* 46 Cal.2d 798, 801, fn. 2 [299 P.2d 850].) "So basic is this requirement [of a union of act and wrongful intent] that it is an invariable element of every crime unless excluded expressly or by necessary implication." (*Id.,* at p. 801.)

In *People* v. *Hernandez,* 61 Cal.2d 529 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092], we considered the matter of intent within a context similar to that presented in the instant case. The defendant in *Hernandez* was convicted of statutory rape under former subdivision 1 of Penal Code section 261, which provided "Rape is an act of sexual intercourse, accomplished with a female not the wife of the perpetrator . . . . 1. Where the female is under the age of eighteen years." On appeal the defendant contended that the court erred in excluding evidence that he had in good faith a reasonable belief that the prosecutrix was 18 years or more in age, and in *Hernandez* we upheld the contention.

*Hernandez* emphasized that we gave recognition to the legislative declarations in Penal Code sections 20 and 26 when we held in *People* v. *Vogel, supra,* 46 Cal.2d 798, that "a [reasonable and] good faith belief that a former wife had obtained a divorce was a valid defense to a charge of bigamy arising out of a second marriage when the first marriage had not in fact been terminated." *Hernandez* quoted from *Vogel,* " 'Nor would it be reasonable to hold that a person is guilty of bigamy who remarries in good faith in reliance on a judgment of divorce . . . that is subsequently found not to be the "judgment of a competent court" . . . . Since it is often difficult for laymen to know when a judgment is not that of a competent court, we cannot reasonably expect them always to have such knowledge and make them criminals if their bona fide belief proves to be erroneous.' " *Hernandez* then declared, "Certainly it cannot be a greater wrong to entertain a bona fide but erroneous belief that a valid consent to an act of sexual intercourse has been obtained." *Hernandez*

had theretofore noted that, although in one sense the lack of the female's consent is not an element of statutory rape, in a broader sense the lack of consent is deemed to remain an element but the law creates a conclusive presumption of the lack thereof. (61 Cal.2d at p. 535.)

*Hernandez* further stated, "Equally applicable to the instant case are the following remarks [in *Vogel*]: 'The severe penalty imposed for bigamy, the serious loss of reputation conviction entails, . . . and the fact that it has been regarded for centuries as a crime involving moral turpitude, make it extremely unlikely that the Legislature meant to include the morally innocent to make sure the guilty did not escape.' [¶] We are persuaded that the reluctance to accord to a charge of statutory rape the defense of a lack of criminal intent has no greater justification than in the case of other statutory crimes, where the Legislature has made identical provision with respect to intent. . . ." *Hernandez* also indicated that the defendant's belief must be, inter alia, reasonable in order to negate criminal intent. (61 Cal.2d at pp. 534-536.)

Although *Hernandez* dealt solely with statutory rape (former subd. 1, Pen. Code, § 261), its rationale applies equally to rape by means of force or threat (Pen. Code, § 261, subds. 2 & 3) and kidnaping (Pen. Code, § 207). Those statutory provisions, like that involved in *Hernandez*, neither expressly nor by necessary implication negate the continuing requirement that there be a union of act and wrongful intent. The severe penalties imposed for those offenses (Pen. Code, § 207 [1 to 25 years in prison (see Pen. Code, § 208)]; Pen. Code, § 261, subds. 2 & 3 [3 years to life (Pen. Code, §§ 264, 671)]) and the serious loss of reputation following conviction make it extremely unlikely that the Legislature intended to exclude as to those offenses the element of wrongful intent. If a defendant entertains a reasonable and bona fide belief that a prosecutrix voluntarily consented to accompany him and to engage in sexual intercourse, it is apparent he does not possess the wrongful intent that is a prerequisite under Penal Code section 20 to a conviction of either kidnaping (§ 207) or rape by means of force or threat (§ 261, subds. 2 & 3).

In reaching the foregoing conclusion, we reject several contrary arguments advanced by the People. The Attorney General relies on *People* v. *Sheasbey*, 82 Cal.App. 459 [255 P. 836], and *People* v. *Trawick*, 78 Cal.App.2d 604, 606 [178 P.2d 45], as establishing the general proposition that no state of mind or belief on the part of the defendant is part of the crime of kidnaping (Pen. Code, § 207) or a defense thereto.

However, it is clear from the statements in *Sheasbey,* when read in their entirety, and from the authority relied upon by *Trawick* that neither case indicates that a wrongful intent on the part of the defendant is not required for kidnaping (Pen. Code, § 207).

The Attorney General urges that the Legislature did not make "the state of mind or belief on the part of the perpetrator of rape relevant as a defense to that crime except as to the circumstances set forth in subdivisions 4 and 5 of section 261." Those subdivisions do require specified mental states on the part of the accused. However, it is implicit in *Hernandez* that the absence of such a requirement in other subdivisions of section 261 does not warrant the conclusion that the Legislature intended the accused's state of mind to become irrelevant in prosecutions under the other subdivisions.

The Attorney General further argues that a defense based on mistake of fact as to the prosecutrix' consent in prosecutions for kidnaping (Pen. Code, § 207) or rape (Pen. Code, § 261, subds. 2 & 3) should not be permitted because it will promote greater resistance by the victim to assure there is no misunderstanding as to consent and that such resistance could result in harm to the victim. The Attorney General notes that utmost resistance by the female to establish lack of consent to intercourse is not required. (See, e.g., *People* v. *Ogden,* 41 Cal.App.2d 447, 453-455 [107 P.2d 50].) Such an argument, in our view, invokes a policy consideration for the Legislature—adoption of the argument would result in effective nullification of Penal Code sections 20 and 26 when applied to cases of kidnaping (Pen. Code, § 207) and rape (Pen. Code, § 261, subds. 2 & 3).

The Attorney General next argues that, even if instructions regarding mistake of fact as to consent are appropriate in some cases of kidnaping (Pen. Code, § 207) and rape (Pen. Code, § 261, subds. 2 & 3), here the court properly determined that the evidence did not warrant such instructions. However, Franklin's testimony summarized above could be viewed as indicating that he reasonably and in good faith believed that Miss B. consented to accompany him to the apartment and to the subsequent sexual intercourse. In addition, part of Miss B's testimony furnishes support for the requested instructions. It appears from her testimony that her behavior was equivocal. Although she did not want Franklin to think she was consenting, her "act" and admitted failure physically to resist him after the initial encounter or to attempt to escape or obtain help might have misled him as to whether she was consenting.

We by no means intimate that such is the *only* reasonable interpretation of her conduct, but we do conclude that there was some evidence "deserving of . . . consideration" which supported his contention that he acted under a mistake of fact as to her consent both to the movement and to intercourse. It follows, accordingly, that the requested instructions, if correctly worded, should have been given. (See *People* v. *Carmen, supra,* 36 Cal.2d 768, 773.)

The People's final argument on the point is that the instructions are erroneous on the theory that the burden resting on the defendant to prove mistake of fact as to consent is not satisfied by merely raising a reasonable doubt as to that issue. The People err in this regard. In *People* v. *Vogel, supra,* 46 Cal.2d 798, 801-803, we concluded that the burden was on the defendant to prove as a defense to a bigamy charge that he had a bona fide and reasonable belief that facts existed which left him free to remarry. ■ Similarly here the burden was on Franklin to prove that he had a bona fide and reasonable belief that the prosecutrix consented to the movement and to sexual intercourse. As to that issue, he was only required to raise a reasonable doubt as to whether he had such a belief. (See *People* v. *Hardy,* 33 Cal.2d 52, 63-66 [198 P.2d 865]; *People* v. *Thomas,* 267 Cal.App.2d 698, 705-709 [73 Cal.Rptr. 590]; Witkin, Cal. Evidence (2d ed. 1966) § 212, subd. (2), p. 193; Law Revision Com. comments to Evid. Code, §§ 500 & 501; but see Witkin, Cal. Criminal Procedure (1963) § 343, p. 335.) The requested instructions so providing are thus correct, and the court erred in refusing to give them.

In *People* v. *Modesto, supra,* 59 Cal.2d 722, 730, we held that "[a] defendant has a constitutional right to have the jury determine every material issue presented by the evidence. Regardless of how overwhelming the evidence of guilt may be, the denial of such a fundamental right cannot be cured by article VI, section 4½ [now 13], of the California Constitution, for the denial of such a right itself is a miscarriage of justice within the meaning of that provision." In *Modesto* an erroneous failure to instruct on a lesser included offense of which the defendant could have been convicted was held to be a denial of that right. (In accord, *People* v. *Hood,* 1 Cal.3d 444, 450 [82 Cal.Rptr. 618, 462 P.2d 370].) An erroneous failure to give other instructions has also been viewed as a denial of that right. (E.g., *People* v. *Wilson,* 66 Cal.2d 749, 764 [59 Cal.Rptr. 156, 427 P.2d 820] [instruction on unconsciousness]; cf. *People* v. *Phillips,* 64 Cal.2d 574, 584-585 [51 Cal.Rptr. 225, 414 P.2d 353] [giving of instruction that relieved the jury of the necessity of finding malice].)

In *People* v. *Sedeno, supra,* 10 Cal.3d 703, 720, we expressly reaffirmed the above quoted holding of *Modesto.* (See also *People* v. *Horn,* 12 Cal.3d 290, 300-301 [115 Cal.Rptr. 516, 524 P.2d 1300].) *Sedeno* overruled a second facet of *Modesto* which had declared that the error in failing to instruct on a material issue cannot be cured by examining the verdict in the light of the instructions given and finding that the jury necessarily resolved, although in a different setting, the same factual question that would have been presented by the missing instruction. (10 Cal.3d at p. 721.) In the instant case, however, while the verdicts impliedly found that the victim did not consent to accompany Franklin to the apartment or to the subsequent intercourse, no claim is made, nor does it appear, that the jury by its verdicts in the light of the instructions given necessarily rejected the evidence supporting Franklin's assertion that he believed reasonably and in good faith that she had so consented. ▆ We conclude, accordingly, that under the rule in *Modesto,* reaffirmed in *Sedeno,* the erroneous refusal to give the mistake of fact instructions was prejudicial.

Insofar as *People* v. *Bowens,* 229 Cal.App.2d. 590 [40 Cal.Rptr. 435] interpreted the *Modesto* rule as limited to manslaughter instructions in murder cases, it is inconsistent with cases such as *People* v. *Sedeno, supra,* 10 Cal.3d 703, 721-724, *People* v. *Hood, supra,* 1 Cal.3d 444, 450-451 and *People* v. *Wilson, supra,* 66 Cal.2d 749, 764. To that extent, *People* v. *Bowens, supra,* is hereby disapproved. Insofar as *People* v. *Moseley,* 240 Cal.App.2d 859, 862-863 [50 Cal.Rptr. 67] and *People* v. *Thomas, supra,* 267 Cal.App.2d 698, 708 state a different rule regarding reversible error for failing to instruct on mistake of fact than the rule stated herein, they are disapproved.

B. *Accomplice Instruction*

Franklin contends that the court erred in refusing to give a requested instruction which submitted to the jury the question whether Miss B. was an accomplice to oral copulation (Pen. Code, § 288a) and directed his acquittal in the event the jury found her to be an accomplice to that crime.

Penal Code section 1111 provides that "[a] conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense . . . ." The section defines an accomplice as "one who is liable to prosecution for the identical offense charged

against the defendant on trial in the cause in which the testimony of the accomplice is given."

If, as a matter of law, a witness is not an accomplice, the court does not err in refusing to submit that issue to the jury. (*People* v. *Hoover*, 12 Cal.3d 875, 880 [117 Cal.Rptr. 672, 528 P.2d 760]; *People* v. *Jones*, 228 Cal.App.2d 74, 95 [39 Cal.Rptr. 302].) On the other hand, if the facts are disputed or susceptible of different inferences, the question whether the witness is an accomplice should be submitted to the jury. (*People* v. *Cisneros*, 34 Cal.App.3d 399, 413 [110 Cal.Rptr. 269]; *People* v. *Jones, supra*, at p. 94; see Witkin, Cal. Evidence (2d ed. 1966) § 1117, p. 1034.)

Here it appears from Miss B's testimony that she merely assented to oral copulation because she was in fear of great bodily harm. Thus under her version of the facts she was not an accomplice. (See *People* v. *Perez*, 9 Cal.3d 651, 657-660 [108 Cal.Rptr. 474, 510 P.2d 1026]; *People* v. *Washington*, 203 Cal.App.2d 609, 610 [21 Cal.Rptr. 788].) Franklin did not mention oral copulation in his testimony. However, he contends that, assuming the act was committed, his own testimony raised an inference that Miss B. was an accomplice because his testimony "as a whole . . . indicates [she] consented to all the events which transpired on July 8, 1971." (See *People* v. *Cox*, 102 Cal.App.2d 285, 286-287 [227 P.2d 290].)

Even if his testimony is susceptible of such an inference and even if it be assumed that there is insufficient corroboration of her testimony and that the requested instruction should have been given, the failure to give it did not result in a miscarriage of justice requiring a reversal. (Cal. Const., art. VI, § 13.) "It is well established that ' "a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." ' [Citations.] [¶] No cases have held failure to instruct on the law of accomplices to be reversible error per se." (*People* v. *Gordon*, 10 Cal.3d 460, 470 [110 Cal.Rptr. 906, 516 P.2d 298].)

Here the jury, by finding Franklin guilty of kidnaping and rape, impliedly found that Miss B. did not consent either to the movement to his apartment or to sexual intercourse. While we reverse the rape and kidnaping convictions because of the court's failure to give the requested mistake of fact instructions, those instructions pertained to Franklin's

state of mind and the failure to give them does not affect the import of the jury's finding that she did not consent to the movement or to intercourse. It is highly unlikely that had the requested accomplice instruction been given, the jury would have found that she became an accomplice by consenting to oral copulation, which was part of the same episode as the other related offenses. ■ From our examination of the record, we therefore do not think it is reasonably probable that a result more favorable to Franklin would have been reached had the instruction been given. (Cal. Const., art. VI, § 13; *People* v. *Watson, supra,* 46 Cal.2d 818, 836.)

### *Franklin's Claim that Court Erred in Giving Instruction on Adverse Inference from His Failure to Explain or Deny Evidence*

The court gave an instruction (consistent with Evid. Code, § 413) that permitted the jury to draw an adverse inference from any failure by either defendant to explain or deny any evidence against him which he could reasonably be expected to explain or deny because of facts within his knowledge. Franklin contends that the court erred in giving the instruction because, inter alia, it violated his privilege against self-incrimination (U.S. Const., 5th & 14th Amends.). ■ However, as we stated in *People* v. *Ing,* 65 Cal.2d 603, 610 [55 Cal.Rptr. 902, 422 P.2d 590], "[u]nder federal decisions a defendant who takes the stand and testifies in his own behalf waives his Fifth Amendment privilege against self-incrimination at least to the extent of the scope of relevant cross-examination. [Citations.]" (In accord, *People* v. *Perez,* 65 Cal.2d 615, 620-622 [55 Cal.Rptr. 909, 422 P.2d 597] [cert. granted (390 U.S. 942 [19 L.Ed.2d 1131, 88 S.Ct. 1055]); writ dism. as improvidently granted (395 U.S. 208 [23 L.Ed.2d 212, 89 S.Ct. 1767])].) As we have seen, Franklin took the stand and freely gave his version of the events on the date of the alleged crimes. No claim is made by him that he failed to explain or deny evidence of any matter that was beyond the scope of relevant cross-examination. Rather he argues that *Ing* and *Perez* are not controlling because they, unlike the instant case, involved a failure to explain or deny evidence of other crimes relevant to show a common scheme or plan, but that fact manifestly does not serve to distinguish this case from those.

In further amplification of his objection, Franklin contends the instruction was improper because the court erroneously sustained objections to questions asked him on direct examination. However, we

are satisfied from our examination of the record that the court properly sustained the objections. Furthermore, Franklin's attorney by rephrasing the questions was able to pursue the same subjects.

Franklin additionally argues that the instruction was improper in that it unduly focused on his testimony, citing *People* v. *Brown,* 22 Cal.2d 752, 756-758 [141 P.2d 1]. However, the instant instruction, unlike the instruction in *Brown,* is peculiarly applicable to a defendant.

### Franklin's Other Claims

A claim by Franklin that his conduct did not constitute kidnaping under the rule in *People* v. *Daniels,* 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677], is without merit, since that rule is inapplicable to section 207 kidnaping (*People* v. *Stanworth,* 11 Cal.3d 588, 596-601 [114 Cal.Rptr. 250, 522 P.2d 1058]). We have carefully considered other contentions asserted by Franklin and find them equally meritless.

The convictions of rape and kidnaping are reversed. In all other respects, the judgments are affirmed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Clark, J., concurred.