Filed 5/5/16  P. v. Arrowood CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAMES CHRISTIAN ARROWOOD,<br><br>    Defendant and Appellant. | E062225<br><br>(Super.Ct.No. FVI1201159)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  R. Glenn Yabuno, Judge.  Affirmed.

Joanna McKim, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Scott C. Taylor and Kristen Hernandez, Deputy Attorneys General, for Plaintiff and Respondent.

1

On August 12, 2014, a jury convicted defendant and appellant James Christian Arrowood of first degree murder under Penal Code[1] section 187, subdivision (a). On October 17, 2014, the trial court sentenced defendant to prison for 25 years to life. On October 24, 2014, defendant filed a timely notice of appeal.

On appeal, defendant contends that his conviction was inherently improbable. For the reasons set forth below, we affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

In 1991, defendant and his brother Michael Arrowood were homeless together for a short period of time. The brothers each received an inheritance but Michael spent all of his. The brothers agreed to use defendant's inheritance to buy drugs, sell them, and travel. They ended up homeless in Las Vegas, and decided to hitchhike to Los Angeles.

John Miller (the victim) picked the brothers up in his truck. The victim drove them to the motel where he was staying and invited them into the room to rest and enjoy pizza and beer before continuing on their trip. Later, when the victim was inside the motel room bathroom, defendant told Michael he saw the victim's money and wanted to steal it. Michael shook his head, "no." Defendant went into the bathroom after the victim came out. The victim stood outside the bathroom door facing Michael when defendant exited the bathroom holding a towel. Defendant placed a towel around the victim's neck from behind and began to strangle him. Michael jumped up and screamed at defendant to stop. Defendant told the victim, "Don't resist. I'm just gonna make you

---

[1] All statutory references are to the Penal Code unless otherwise specified.

go unconscious." After a minute or two of defendant pulling the towel around the victim's neck, the victim died.

Defendant used the towel to ease the victim down to the ground, then he released his grip on the towel and stood up. Defendant grabbed the money, which was in a cup near the sink, and put the money in his pocket. Defendant lifted the mattress up off the bed. Defendant and Michael began to move the victim's body and place it underneath the mattress, but Michael became nauseous and left the room. Defendant eventually met Michael outside and the two drove to Los Angeles in the victim's vehicle. At some point, they "ditched the truck" and "wiped everything down" before leaving; they headed to Santa Monica. The brothers eventually moved back home, to Tennessee.

On May 7, 1991, police found the victim's body under the mattress in the motel room in Victorville. A towel was wrapped tightly around his neck. The cause of death was ligature strangulation. Defendant was a major contributor as to the DNA found on the ends of the towel. The victim and Michael were excluded as major contributors. Michael was a possible contributor to hair found on the towel; defendant and the victim were excluded as contributors. No fingerprints were found in the motel room.

On May 9, 1991, the victim's truck was found in Pomona. The truck was open and the keys were on the driver's seat. Michael's fingerprints were found on the exterior of the truck.

In 2010, two detectives from San Bernardino County contacted Michael in Tennessee. Initially, Michael denied being involved in the victim's murder. However, Michael eventually admitted his involvement and said defendant was responsible.

Michael pled guilty to voluntary manslaughter and robbery in exchange for a 12-year prison sentence. His plea agreement required Michael to testify truthfully in defendant's case.

**DISCUSSION**

Defendant contends that "the evidence was insufficient to support the jury's finding [defendant] was guilty of murder." Defendant does not challenge the sufficiency of the evidence as to any particular element of his murder conviction. Instead, he argues that Michael's testimony was inherently improbable and asks us to reverse the judgment.

A.     <u>STANDARD OF REVIEW</u>

When reviewing a claim alleging insufficient evidence, the reviewing court reviews the entire record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 318-319; *People v. Story* (2009) 45 Cal.4th 1282, 1296.) The testimony of a single witness is sufficient evidence to support a conviction. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

It is well established that "[c]onflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." (*People v. Lewis* (2001) 26 Cal.4th 334, 361.) The trier of fact is free to disbelieve testimony and to infer that the

4

truth is otherwise when circumstantial evidence of the defendant's actions supports such an inference. (*People v. Beeman* (1984) 35 Cal.3d 547, 558-559.)

      B.      <u>DEFENDANT'S GUILT IS NOT "INHERENTLY IMPROBABLE"</u>

"While an appellate court can overturn a judgment when it concludes the evidence supporting it was 'inherently improbable,' such a finding is so rare as to be almost non-existent." (*People v. Ennis* (2010) 190 Cal.App. 4th 721, 728.) "'To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions.' [Citation.] Such cases are rare indeed.'" (*DiQuisto v. County of Santa Clara* (2010) 181 Cal.App.4th 236, 261.)

In this case, defendant claims that "the judgment should be reversed because no reasonable juror would have believed Michael's testimony implicating [defendant] in the crime."

Defendant's argument fails under the inherently improbable standard. "The inherently improbable standard addresses the basic content of the testimony itself—i.e., could that have happened?—rather than the apparent credibility of the person testifying." (*People v. Ennis*, *supra*, 190 Cal.App.4th at p. 729.) "Hence, the requirement that the improbability must be 'inherent' and the falsity apparent 'without resorting to inferences or deductions.'" (*Ibid.*) The challenged evidence must be improbable "'on its face.'" (*People v. Mayberry* (1975) 15 Cal.3d 143, 150.) "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and

the truth or falsity of the facts upon which a determination depends." (*People v. Huston* (1943) 21 Cal.2d 690, 693, overruled on another ground in *People v. Burton* (1961) 55 Cal.2d 328, 352.)

Here, in support of his argument, defendant states, "Michael had every reason to portray [defendant] as the mastermind behind the crime and direct perpetrator in order to facilitate obtaining a better deal for himself. Michael, not [defendant], had the motive to steal since he had spent all his money and was living off of [defendant]." In essence, defendant argues that Michael "had the motive to commit the murder and to testify falsely to obtain a reduced sentence." However, whether Michael had the motive to murder the victim cannot be reached "without resorting to inferences or deductions," as required under the inherently improbable standard. In this case, Michael's testimony was not inherently improbable—the testimony was not unbelievable per se, physically impossible or wholly unacceptable to reasonable minds. (*People v. Ennis*, *supra*, 190 Cal.App.4th at p. 729.) In this case, the events, as described by Michael, could have happened, and is supported by the DNA analysis provided during trial. (See *Ibid.* [inherently improbable standard addresses "could that have happened?"].)

Notwithstanding, in his reply brief, defendant argues that "it is illogical, and challenges credulity to think that one who had the motive to commit the murder simply sat on the sidelines and did nothing; yet, the one who had no reason to commit the crime was the direct perpetrator." We wholly reject defendant's argument. Again, we reiterate that in order to determine that *only* Michael, and not defendant, had the motive to commit murder cannot be determined without making inferences or deductions because of their

6

financial situation.  In this case, the jury heard Michael's testimony, assessed his credibility, and weighed his testimony in light of the other evidence offered. The jury then found defendant guilty of first degree murder.  Although defendant argues that "a reasonable factfinder would not have believed Michael's version of the events," in this case, the jurors indeed believed in Michael's testimony.  It is not our function on appeal to reweigh the evidence to determine who had the motive to commit the murder.

In sum, we find that defendant's conviction is supported by substantial evidence.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
                                              Acting P. J.

We concur:

CODRINGTON
                        J.

SLOUGH
                        J.

7