Filed 8/29/25  P. v. Richardson CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANTOINE LEON RICHARDSON,<br><br>    Defendant and Appellant. | B335448<br><br>(Los Angeles County<br>Super. Ct. No. MA085418-01) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Emily Cole, Judge.  Affirmed.

William G. Holzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

A jury convicted Antoine Leon Richardson of one count of criminal threats. At trial, the victim testified that he saw Richardson brandish a gun while making the underlying threat. The sole issue that Richardson raises on appeal is that insufficient evidence supports his criminal threats conviction, arguing the victim's testimony was inherently improbable because the People did not present any evidence that a gun was found when the police searched Richardson's apartment shortly after the underlying threat was made. We reject this argument. The People were not required to corroborate the victim's testimony that Richardson brandished a gun while making the underlying threat. Nor was the victim's testimony inherently improbable, as it was not unbelievable per se. We therefore affirm Richardson's criminal threats conviction.

## BACKGROUND

In June 2023, Richardson lived in an apartment in Lancaster. Richardson's neighbors, Brianna and Miguel Bolden, lived with their children near Richardson's apartment.[1] Previously, there had been no issues between the neighbors. However, that month, Richardson had a series of interactions with Miguel and Brianna that culminated in Richardson being charged with making criminal threats under Penal Code[2] section 422, subdivision (a).

Approximately two weeks before Richardson's arrest, Brianna and her father were outside their apartment when

---

[1] Because they share the same last name, we refer to Brianna Bolden and Miguel Bolden by their first names.

[2] All further undesignated statutory references are to the Penal Code.

Richardson drove by and stopped his car in front of them. He said to Brianna, "What the fuck are you looking at, bitch," prompting Brianna's father to call Miguel outside. As Miguel walked outside, he heard Richardson telling Brianna to " '[c]all your husband outside. I'm going to break his jaw. I'mma hurt him.' " Richardson then said directly to Miguel, " 'I'mma . . . beat you up. I'm going to break your jaw. I'm going to hurt you.' " Richardson also threatened to kill Miguel if he called the police. Miguel went back inside his home with his family as Richardson stood behind them making more threats. After this interaction, Miguel became concerned about his family's safety. Miguel and Brianna decided to move their family to a new home.

Approximately two weeks later, on the morning of June 26, 2023, Brianna's daughters told her that Richardson knocked down a wooden gate on their property. Brianna called the police. She then called Miguel to tell him what happened.

Miguel drove home immediately. While Miguel was approaching his home, Richardson drove out of his garage and began to follow Miguel. Miguel, "in fear of [his] life," drove to the police station and parked his car. Richardson drove past, pointed his finger at Miguel and said, "Watch your back. I'm going to get you."

Miguel returned home after calling his wife from the police station. Police officers later arrived and informed Brianna and Miguel they would search for Richardson. The officers told Brianna and Miguel to call the police if they encountered Richardson.

Approximately four to five hours later, Miguel, Brianna, and Brianna's father were loading a U-Haul and preparing to move. Brianna's father told her that Richardson had arrived

home. Brianna went inside and called the police to inform them about Richardson's location.

That evening, Richardson backed his car into his garage. While he was about 10 to 15 feet away from Miguel, Richardson reached out of his window, pointed a gun at Miguel, and said that he was "going to kill" Miguel before closing his garage door. Miguel believed Richardson was going to shoot him because of their interactions over the past two weeks.

Miguel entered his garage and asked Brianna to tell the police that Richardson had pointed a gun at him and threatened to kill him. Brianna, who was still on the phone with police, relayed this information.

When the police arrived, an officer instructed Richardson over the phone to exit his apartment. Richardson told the officer that he was not home and hung up. A tactical team later arrived and arrested Richardson. The police searched Richardson's apartment. An officer who testified at trial but did not search Richardson's apartment did not know whether the officers who searched the apartment found a gun.

In July 2023, the People charged Richardson with one count of criminal threats. (§ 422, subd. (a).) A jury found him guilty as charged. The court sentenced Richardson to an eight-month term to run consecutive to a sentence from another case that is not related to this appeal.

Richardson filed a timely notice of appeal.

## DISCUSSION

To convict a defendant of criminal threats, the People must prove: (1) the defendant willfully threatened to commit a crime which would result in death or great bodily injury to another person; (2) the defendant intended for the statement to be viewed

4

as a threat, even if the defendant did not actually intend to carry out the threat; (3) the threat, on its face and under the circumstances in which it was made, was " 'so unequivocal, unconditional, immediate, and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat' "; (4) the threat actually caused the person threatened " 'to be in sustained fear for his or her own safety or for his or her immediate family's safety' "; and (5) the threatened person's fear was reasonable under the circumstances. (*In re George T.* (2004) 33 Cal.4th 620, 630.)

We review a jury's findings for substantial evidence. (*People v. Boyer* (2006) 38 Cal.4th 412, 479.) We must determine whether the record contains evidence that is "reasonable, inherently credible, and of solid value." (*Id.* at p. 480.) In doing so, we "review the evidence in the light most favorable to the prosecution . . . presum[ing] every fact the jury could reasonably have deduced from the evidence." (*Ibid.*) We do not reweigh the evidence or reevaluate the credibility of witnesses. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

" ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' " (*People v. Cravens* (2012) 53 Cal.4th 500, 508.) Therefore, before we may set aside the judgment, it must be clear that " ' "upon no hypothesis whatever is there sufficient substantial evidence to support it." ' " (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

Richardson argues insufficient evidence supports his criminal threats conviction, claiming Miguel's testimony that Richardson brandished a gun while making the underlying threat

5

is inherently improbable because the People did not present evidence that the police found a gun when they searched Richardson's apartment after he was arrested.  As we explain, this argument lacks merit.

The testimony of a single witness generally is sufficient to "uphold a judgment 'even if it is contradicted by other evidence, inconsistent or false as to other portions.' " (*People v. White* (2014) 230 Cal.App.4th 305, 319, fn. 14.)  "Consequently, '[c]onflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' " (*People v. Ennis* (2010) 190 Cal.App.4th 721, 729 (*Ennis*).)

An appellate court may reject a witness's testimony only if it is inherently improbable or incredible—i.e., it is unbelievable per se, physically impossible or wholly unacceptable to reasonable minds.  (*Ennis*, *supra*, 190 Cal.App.4th at p. 729.)  A witness's statements are inherently improbable only if there exists " ' " 'either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions.' " ' " (*People v. Thompson* (2010) 49 Cal.4th 79, 124.)  The challenged statements must be improbable on their face, and we do not compare them to other evidence, except certain universally accepted and judicially noticeable facts.  (*Ennis*, at p. 729.)  Although we may reverse a judgment if we conclude the evidence supporting it "was 'inherently improbable,' such a finding is so rare as to be almost nonexistent." (*Id.* at p. 728.)

Miguel's testimony that Richardson brandished a gun while making the underlying threat was not inherently improbable.

6

The testimony was not unbelievable on its face, nor did it describe a physical impossibility. Without reference to any other facts, it certainly is possible that Richardson brandished a gun when he threatened Miguel. (See *Ennis*, *supra*, 190 Cal.App.4th at p. 729 [the only issue is whether it "seem[s] *possible* that what the witness claimed to have happened actually happened"].) Such conduct is far from extraordinary, let alone impossible or unbelievable.

That the People did not present evidence that the police found a gun when they searched Richardson's home after he was arrested for making the underlying threat does not mean Miguel's testimony was inherently improbable. As we just explained, the testimony of a single witness is ordinarily sufficient to support a judgment, and the People were not required to independently corroborate the victim's testimony that Richardson brandished a gun. (*People v. Panah* (2005) 35 Cal.4th 395, 489.)

In any event, even if we were to assume, as Richardson urges us to, that the People's failure to prove the police found a gun while searching his apartment compelled the jury to find that a gun was never found, that does not mean the victim's testimony was inherently improbable.[3] There could be any number of reasons why the police never found a gun while searching Richardson's apartment, even though the victim saw Richardson brandish one earlier that day. For instance, Richardson could have hidden the gun somewhere outside the

_____

[3] According to statements in Richardson's probation report, the police did not find a gun while searching Richardson's apartment. The probation report was not introduced at trial, nor did any witness testify at trial that a gun was never found.

7

apartment or in a hard-to-find location inside the apartment, or the police might not have searched every corner of the apartment. (See *People v. Mayberry* (1975) 15 Cal.3d 143, 150 [rejecting inherent improbability argument while noting other reasonable inferences supporting the defendant's conviction that the jury could have drawn from the challenged evidence].)  At most, evidence that the police did not find a gun while searching Richardson's apartment creates an inconsistency between Miguel's testimony and the evidence concerning the results of that search.  But such a discrepancy does not render a witness's testimony inherently improbable.  (*Ennis*, *supra*, 190 Cal.App.4th at p. 729.)

In sum, we reject Richardson's argument that Miguel's testimony was inherently improbable.  Because Richardson does not otherwise contend that the People failed to prove he committed a criminal threat, he has not shown his conviction is not supported by substantial evidence.  (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573 [when raising a substantial evidence challenge to a conviction, it is the appellant's burden to affirmatively demonstrate that the evidence is insufficient].)

**DISPOSITION**

The judgment is affirmed.

VIRAMONTES, J.

WE CONCUR:

STRATTON, P. J.

RUBIN, J.*

---

* Retired Presiding Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.