[No. A127831. First Dist., Div. Three. June 14, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN F. SOJKA, Defendant and Appellant.

## COUNSEL

Janet J. Gray for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Eric D. Share and Christopher W. Grove, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SIGGINS, J.**—Appellant John F. Sojka was convicted by a jury of one count of attempted rape by force. He argues that the trial court failed to instruct the jury that he could not be guilty of attempted rape if he reasonably but mistakenly believed the victim consented to intercourse. We agree that the trial court should have instructed on Sojka's mistaken belief in the victim's consent, and that its failure to do so was prejudicial. We therefore reverse the judgment. In light of our holding, we do not address Sojka's other claims of error.

### BACKGROUND

Sojka met the victim early one evening in a bar when she was delivering some posters promoting a musical production. The two struck up a conversation and Sojka bought her a beer. One beer led to another and a bit later the two left and went to another bar where they socialized with other patrons, continued drinking, and played pool until about midnight. Over the course of the evening Sojka and the victim were friendly and mildly amorous with one another. They left the bar and Sojka offered to give the victim a ride home. He says that once the two got into his car, they kissed and caressed each other for about 15 minutes. The victim does not remember doing so, but recalled being affectionate with Sojka and not at all apprehensive about him. He was feeling good about her, and thought the two might have sex.

Their accounts of what happened once they arrived at the victim's apartment are starkly different. The victim says that she used the bathroom. When she came out, Sojka was completely naked and forced himself on her. She was shocked and froze, but when he did not relent she said "no" and told him not to touch her. Sojka kept advancing on the victim. He removed her clothes, was kissing her all over, digitally penetrated her vagina, performed oral sex on her and tried to force her to perform oral sex on him. She was objecting and resisting the entire time, but did not scream. When Sojka climbed on top

of her and attempted intercourse, he finally began to heed the victim's pleas to stop. He again tried to get her to perform oral sex on him, but eventually got up and moved away. He put on his clothes and left the apartment.

Sojka, on the other hand, testified that after the victim came out of the bathroom, the two started kissing, removed each other's clothes and dropped to the floor. He fondled her and performed oral sex on her. She seemed excited, and was moaning a little bit like she was enjoying their foreplay. She did not complain, resist or act like she wanted him to stop. When Sojka climbed on top of the victim to initiate sexual intercourse, she pushed him and yelled at him to stop. He got up, put his clothes on and left the apartment.

The victim was initially in shock and apprehensive about reporting the incident to police. She spent some time talking to her boyfriend and her best friend on the phone, showered and slept for a few hours before calling 911 shortly after 5:00 a.m. She was taken to the hospital by police and examined by a nurse practitioner. She had injuries that were consistent with the story she told to the nurse practitioner about her nonconsensual sex with Sojka. But, with the possible exception of some "fingertip" bruising around one of the victim's knees, all of her injuries could also have arisen from consensual sex. An expert also testified that a woman with the victim's physical characteristics who had consumed the amount of alcohol she reportedly consumed between 5:00 p.m. and midnight would have had approximately a 0.20 percent blood-alcohol level at the time of the assault.

The jury could not reach verdicts on oral copulation by force, sexual penetration by force, attempted oral copulation by force, sexual battery by restraint, sexual battery and false imprisonment. Sojka was acquitted of attempted sexual penetration by force, but convicted of attempted rape by force. He was sentenced to the middle term of three years in prison. He timely appealed.

## DISCUSSION

In *People v. Mayberry* (1975) 15 Cal.3d 143 [125 Cal.Rptr. 745, 542 P.2d 1337], our Supreme Court held that a defendant who entertains a reasonable and good faith, but mistaken, belief that a victim voluntarily consented to intercourse does not have the wrongful intent necessary to be convicted of rape by force. (*Id.* at p. 155.) This defense has both a subjective and objective component. (*People v. Williams* (1992) 4 Cal.4th 354, 360 [14 Cal.Rptr.2d 441, 841 P.2d 961].) In order to satisfy the subjective component, the defendant "must adduce evidence of the victim's equivocal conduct on the basis of which he erroneously believed there was consent." (*Id.* at p. 361.)

To satisfy the objective component, the defendant must show his belief regarding consent was formed in circumstances society will tolerate as reasonable. (*Ibid.*) When warranted by the evidence, it is error for the court to decline an instruction on the effect of a defendant's reasonable and honest belief in the victim's consent. (*People v. Mayberry, supra,* 15 Cal.3d at pp. 156–157.)

In *People v. Williams, supra,* 4 Cal.4th 354, 361, the court clarified that not just any evidence, but only evidence sufficient to deserve consideration by a jury warrants a *Mayberry* instruction. Thus, "the instruction should not be given absent substantial evidence of equivocal conduct [on the part of the victim] that would have led a defendant to reasonably and in good faith believe consent existed where it did not." (*Id.* at p. 362.)

Here, the Attorney General argues that because Sojka and the victim gave starkly different accounts of the sexual activity that occurred between them, and the victim was so clear that she resisted Sojka at all turns, there was no basis to conclude the victim's conduct was equivocal. Moreover, says the Attorney General, because Sojka argued that he stopped his advances when the victim rejected his attempt to have intercourse there was no evidence that he misinterpreted the victim's conduct. We disagree on both counts.

We disagree with the Attorney General's first premise because one can only conclude the victim was unequivocally resistant to intercourse by completely disregarding Sojka's testimony. That is not the law. The cases where courts have disregarded a defendant's testimony about a victim's behavior are limited to circumstances where the defendant's version would prove actual, not mistaken belief in, consent. (See *People v. Williams, supra,* 4 Cal.4th at pp. 362–363; *People v. Dillon* (2009) 174 Cal.App.4th 1367, 1382 [95 Cal.Rptr.3d 449].) Contrary to the Attorney General's suggestion, neither Sojka's testimony nor the victim's provides reasonable support for a theory based upon her actual consent to sexual intercourse. In fact, both say she rejected his attempt and that her rejection stopped Sojka's advance. This is the Attorney General's second point. Because he stopped, the Attorney General says Sojka could not have been mistaken about the victim's consent. But it is the events that led to the victim's rejection of Sojka's advance, not her rejection or his cessation, that are material to his possible mistaken belief. Just because he stopped when she said no to intercourse does not make all that went before irrelevant or immaterial to the issue of consent. Sojka testified that it seemed to him the victim was enjoying their foreplay and their sexual activity was mutual. The prosecutor in closing acknowledged that the victim had been affectionate and physically intimate with Sojka. Given the

events that occurred over the course of the evening, and Sojka's testimony of what occurred in the victim's apartment, the jury should have been instructed on Sojka's reasonable good faith, but mistaken, belief in her consent to sexual intercourse.

Thus, we must also consider whether the failure to give the *Mayberry* instruction was prejudicial. An error arising from the failure to instruct on a defense to a charge is most commonly analyzed under the test articulated in *People v. Watson* (1956) 46 Cal.2d 818 [299 P.2d 243]. (*People v. Russell* (2006) 144 Cal.App.4th 1415, 1431–1432 [51 Cal.Rptr.3d 263].) The judgment is reversed when it appears from an examination of the record that there is a reasonable probability the defendant would have obtained a more favorable outcome had the error not occurred. (*People v. Russell, supra*, 144 Cal.App.4th at 1432; *People v. Watson, supra*, 46 Cal.2d at p. 836.)

"In determining whether instructional error was harmless, relevant inquiries are whether 'the factual question posed by the omitted instruction necessarily was resolved adversely to the defendant under other, properly given instructions' [citation] and whether the 'defendant effectively conceded the issue' [citation]. A reviewing court considers 'the specific language challenged, the instructions as a whole[,] the jury's findings' [citation], and counsel's closing arguments to determine whether the instructional error 'would have misled a reasonable jury . . . .' " (*People v. Eid* (2010) 187 Cal.App.4th 859, 883 [114 Cal.Rptr.3d 520].)

The jury was instructed that two of the elements of rape by force are the victim's lack of consent and the defendant's accomplishment of intercourse by force. It was told: "To consent, a woman must act freely and voluntarily and know the nature of the act." It was also told the defendant is guilty of an attempt if he took a direct but ineffective step toward committing rape by force and he intended to commit the crime. Moreover, the jury was instructed that a person "is guilty of an attempt even if, after taking a direct step toward committing the crime, he or she abandoned further efforts to complete the crime or his or her attempt failed or was interrupted by someone or something beyond his control."

In context, the jury could reasonably have concluded that Sojka was guilty of attempted rape because the victim had not actually given her consent when Sojka attempted intercourse and he only stopped because she rejected him. Contrary to the Attorney General's argument, there is no reason to conclude that consideration of Sojka's reasonable, but mistaken, belief the victim consented to intercourse was subsumed in other instructions. This is not a case where jurors were ever instructed on the legal effect mistaken belief in

consent could have on the defendant's guilt in another, albeit unrelated instruction. (See *People v. Dillon, supra,* 174 Cal.App.4th at pp. 1379–1380.)

The fact of the jury's inability to reach verdicts on four other charges and acquitting on one supports our conclusion. The evidence concerning the sexual interaction between Sojka and his victim was hotly disputed, and some particulars of the victim's account were obviously insufficient to fulfill the prosecution's burden of proof. In the circumstances, it was wrong for the trial court to entirely discount Sojka's testimony when considering whether to instruct on his possible mistaken belief in her consent to intercourse. If the trial court had a concern that the victim's equivocal conduct or acquiescence in sexual conduct arose only after Sojka overcame her will, the jury could have been further instructed "that a reasonable mistake of fact may not be found if the jury finds that such equivocal conduct on the part of the victim was the product of 'force, violence, duress, menace, or fear . . . .' " (*People v. Williams, supra,* 4 Cal.4th at p. 364.)

In order to prove Sojka guilty of attempted rape the prosecution was required to prove that he had the specific intent to rape the victim by showing that (1) Sojka intended to have sexual intercourse, (2) against the victim's will, and (3) by means of force, violence, duress, menace or fear of bodily injury. (*People v. Lee* (2011) 51 Cal.4th 620, 633 [122 Cal.Rptr.3d 117, 248 P.3d 651].) "If the jury finds the defendant harbored a reasonable belief in the alleged victim's consent, it must find that he lacked the specific intent to commit rape." (*People v. Dillon, supra,* 174 Cal.App.4th at p. 1383.)

Sojka never relinquished his claim that he believed the victim consented to intercourse. There was no concession on the point, and neither lawyer informed the jury that Sojka's mistaken but unreasonable belief in consent was a defense to attempted rape by force. In fact, the prosecution argued just the opposite. The jury was told that what Sojka was thinking was "irrelevant. Whether he thinks she is consenting is irrelevant, ladies and gentlemen. It is actual consent that's involved here. [¶] Did [she] consent is the issue. Not whether he imagined that she did."

Here, in equivocal circumstances, the jury could easily have concluded Sojka's intent was irrelevant. In fact, it was invited by the prosecution to so conclude. The failure to instruct on the potential effect of Sojka's good faith but mistaken belief was prejudicial and the trial court should have included in its delivery of CALCRIM No. 1000 its final paragraph that addresses a defendant's reasonable belief in consent.

## DISPOSITION

The conviction for attempted rape by force (Pen. Code, §§ 664, 261, subd. (a)(2)) is reversed.

McGuiness, P. J., and Jenkins, J., concurred.

Respondent's petition for review by the Supreme Court was denied October 12, 2011, S195051.