Filed 3/4/15 Unmodified version attached

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>EARNEST L. ANDREWS,<br><br>　　　Defendant and Appellant. | H039340<br>(Santa Clara County<br>Super. Ct. No. F1242829)<br><br><br>**ORDER MODIFYING OPINION**<br><br>**NO CHANGE IN JUDGMENT** |

THE COURT:

The court orders that the partially published opinion filed February 18, 2015, be modified as follows:

1.　　　On page 23, the third sentence in the section captioned "DISPOSITION" is ordered stricken, and is replaced with the following:

> "The abstract of judgment shall be amended (a) to reflect that the sentences previously imposed for the count 4 and count 5 convictions and their enhancements are stayed pursuant to section 654, and (b) to delete the registration requirement under section 290 which was imposed in connection with the count 2 conviction."

The petition for rehearing filed on behalf of appellant Earnest L. Andrews is denied.

There is no change in the judgment.

Date:　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　Márquez, J.


_____　　_____
Bamattre-Manoukian, Acting P.J.　　　　　Grover, J.

Filed 2/18/15 Unmodified version
**CERTIFIED FOR PARTIAL PUBLICATION**[*]


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| THE PEOPLE, | H039340 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. F1242829) |
| v. | |
| EARNEST L. ANDREWS, | |
| Defendant and Appellant. | |


Defendant Earnest L. Andrews was convicted by a jury of misdemeanor sexual battery of Elizabeth Doe (Pen. Code, §§ 242-243.4, subd. (e)(1); count 2).[1] The jury also convicted defendant of three felonies (counts 3, 4 and 5) involving a second victim, Juanita Doe. But, as to the first victim (Elizabeth Doe), the jury acquitted defendant of rape (§ 261, subd. (a)(2); count 1) and the lesser-included offense of assault with intent to commit rape (§ 220). The court sentenced defendant to seven years in prison.

Defendant asserts three claims of error on appeal. First, he argues the court erred in failing to give an instruction under *People v. Mayberry* (1975) 15 Cal.3d 143 (*Mayberry*) for the misdemeanor sexual battery charge. The proposed instruction would have advised the jury that defendant's honest and good faith belief that the victim had consented to the sexual contact would require a verdict of acquittal. The *Mayberry*

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II and part III of the Discussion.

[1] Further statutory references are to the Penal Code.

instruction was given for the rape charge and the lesser-included offense of assault with intent to commit rape—offenses of which defendant was acquitted—but was not given for the misdemeanor sexual battery offense. Second, defendant argues that he received prejudicially ineffective assistance of counsel, based on counsel's failure to make a motion for acquittal under section 1118.1 as to the sexual battery count after the prosecution rested. He contends the prosecution presented no evidence to support a conviction for that offense, and the only evidence upon which he could have been convicted was presented by defendant. Third, defendant contends there is an error in the abstract of judgment because it is inconsistent with the court's oral pronouncement of the judgment.

We hold in the published portion of this opinion that where a defendant is charged with misdemeanor sexual battery, a *Mayberry* instruction must be given when there is substantial evidence to support the defense and it is not inconsistent with the defendant's theory of the case. Because we conclude the court erred in failing to give a *Mayberry* instruction in connection with the misdemeanor sexual battery charge, and this error was prejudicial, we will reverse the judgment. In the unpublished portion of the opinion, we conclude that defendant's second claim of error that he received prejudicially ineffective assistance of counsel is without merit. We also conclude that the abstract of judgment must be corrected. Accordingly, we will reverse the judgment as to the misdemeanor sexual battery conviction and will remand this matter to the trial court for retrial or other proceedings as to that count and for amendment of the abstract of judgment.

## FACTS

### I. *Evidence Related to Counts 1 and 2 (Elizabeth Doe)*

#### A. Prosecution Evidence

Elizabeth was a transient and an alcoholic. She met defendant through a friend who was also homeless. Defendant later invited Elizabeth to stay with him in his apartment on Ciolino Street in Morgan Hill, saying that he himself had been homeless for

2

many years.  After he told her it was a one-bedroom apartment, she said she would stay with him, but "no sex, and he agreed to it."  Elizabeth stayed with defendant for approximately two to three months.  She slept on the floor, and they would watch television and drink beer.  Elizabeth told defendant several times while she was living with him that she would not have sex with him.

Elizabeth testified that she did not recall the time of day that defendant raped her, but that it was still daytime and getting close to dusk.  She had drunk probably five or six beers that day.  She had gone to the apartment of her friend, Judy Glenn, and had played cards and listened to music.  She then left and went to defendant's apartment about one block away.

Elizabeth and defendant sat on the couch and had a beer.  Sometime thereafter, defendant shoved her onto the floor.  She "knocked out."  When she regained consciousness, she was on her stomach, and defendant was on her back "knocking [her] face to the carpet."  Her belt was undone and her pants were down.  Defendant was behind her with his penis in her vagina.  He was very heavy and she struggled unsuccessfully to get him off of her.  She said, " 'No' " a number of times.  At some point, defendant got off of Elizabeth.  She pushed him away, pulled up her pants, and ran out of the apartment.

Elizabeth ran to Glenn's apartment, holding her pants up with one hand.  Elizabeth told her what happened and Glenn called the police on her cell phone.  Elizabeth had carpet burns on the right side of her face.

Glenn testified that, as of October 2011, she lived about two blocks from defendant and they had known each other for years.  They both lived in government-sponsored apartments for recovering alcoholics.  Glenn had been acquainted with Elizabeth for one to two years.  Glenn knew that Elizabeth had stayed with defendant for a period of time.  Elizabeth would also stay periodically with Glenn and her husband "when [defendant] would kick her out."

3

On October 20, 2011, Elizabeth had visited Glenn. Elizabeth had been drinking and had upset Glenn, who asked her to leave. Shortly afterward, Elizabeth returned and called to Glenn from outside the apartment, yelling several times that she had been raped. "She said[,] 'Ernie did it.' " Elizabeth "kind of threw herself" on Glenn's porch, and Glenn and her husband helped her inside their apartment. Glenn observed that Elizabeth's pants were unzipped and unbuttoned and there were rug burns on her face. Glenn got her cell phone, called 911, and handed Elizabeth the phone.

Officer Michael Brookman of the Morgan Hill Police Department was the first officer who responded to the scene, arriving shortly after 3:00 p.m. He contacted Elizabeth, who was sitting on the front steps of the apartment and was sobbing and screaming; she was holding her head and stomach. She screamed repeatedly, " [']He raped me.['] " She also said, " [']He beat me.['] " Officer Brookman testified that "[Elizabeth] was fairly intoxicated." He observed that the right side of her face was scraped and she was bleeding slightly from her lower lip. She said she had sustained damage to her teeth from the incident. Her belt was undone with the buckle end pulled out partially, and the top button of her pants was undone and the zipper was partially down. Elizabeth picked up the buckle end of her belt and showed it to the officer, indicating she had left it that way for him to observe. She was transported by ambulance to the hospital.

Elizabeth's blood was drawn by a phlebotomist from Santa Clara County at 5:05 p.m. on October 20, 2011. The sample was tested by the Santa Clara County Crime Laboratory. It was determined that Elizabeth's blood alcohol level was 0.24.

Commencing at approximately 7:00 p.m. that same day, Kathleen Stallworth, a registered nurse at Santa Clara Valley Medical Center, performed a two-hour SART (Sexual Assault Response Team) examination upon Elizabeth. Stallworth observed that Elizabeth had an abrasion on her left lower lip, and had "rug burn type" abrasions on her right cheek, on the right side of her nose, and above her right eyebrow. Elizabeth also

4

reported that she had "painful teeth." Stallworth performed a genital examination of Elizabeth and noted that there was evidence of trauma, i.e., "injury, redness and swelling on the labia [minora]." The condition could have been caused by a number of things, including a reaction to a chemical, a reaction to an animate or inanimate object, or an infection. The area of trauma was "in the general [region] of where many injuries are seen in sexual assault."

During the SART examination, Stallworth took vaginal swabs from Elizabeth and made slides from them. The swabs and slides were tested by the Santa Clara County Crime Laboratory for the presence of sperm; none was found.

### B. Defense Evidence

#### 1. Defendant's Testimony

Defendant testified that in the three and one-half years before October 2011 that he had lived in the apartment on Ciolino Street in Morgan Hill, he had allowed over a dozen friends to stay with him, mostly because they were homeless or needed a place to stay. He had empathy for them because he had "spent a great number of years out on the street" and "[knew] what it's like to sleep on . . . a bench, a street corner, doorway, field." He had allowed Elizabeth to sleep in his apartment approximately six weeks before the incident in question. She slept on the floor when she stayed there.

According to defendant's testimony, around mid-day on October 20, 2011, Elizabeth came over to his apartment. Before she arrived, defendant had had a 24-ounce can of Earthquake beer, which has 12 percent alcohol. He had also not slept in two days because he had been on methamphetamine. Defendant testified that Elizabeth was intoxicated. Defendant was in the living room listening to the radio while Elizabeth was cooking potatoes in the kitchen. Defendant got up and went to see what she was cooking. Elizabeth smiled and poked him with her finger and tugged at his clothes in a "playful manner." Defendant went back to the living room. Elizabeth followed him and "wrapped herself around [him] from behind." He turned around and hugged her back.

5

Defendant testified that he then lifted Elizabeth and carried her to the couch. He intended to place her on the arm of the couch, but missed, and they both fell to the floor. Elizabeth was lying on her back with her leg behind her. Defendant had his full body weight on top of her. It was an accident that he ended up on top of Elizabeth. She told defendant her leg hurt and he got off of her. At some point during the encounter, defendant got an erection. Elizabeth wrapped her legs around defendant's waist and pulled him back down on top of her. He lifted himself up onto his knees, unbuckled her belt, and unsnapped her pants. He had thought she wanted to have sex with him. Elizabeth then put her hands over her zipper. Defendant "d[id]n't do anything else." He interpreted her actions as telling him to "[s]top." She didn't say anything, but according to defendant, she then pulled her shirt up over her bra. Defendant "touch[ed] the top of her bra [covering her breast] in a massage like manner" with both hands. He did not think what he was doing was unwanted. Elizabeth told him, " 'No, stop. Get off.' " She seemed angry. Defendant immediately got off of her and moved away. Elizabeth then straightened her clothes, put on a jacket, and walked out of the apartment.

Defendant never removed his shorts or slipped them down at any time during the encounter with Elizabeth. He did not have sex with her, nor did he shove her face into the carpet. While they were on the floor together, defendant wanted to have sex with Elizabeth, and he thought she wanted to have sex with him. He felt "[d]isappointed" when she stopped him from pursuing sex.

Defendant was arrested later that day and was incarcerated. After he was released, he returned to his apartment where he found Elizabeth sitting on his couch. She did not say anything to defendant, but immediately got up, grabbed her jacket and left. She came back at several other times, but defendant did not answer the door.

On cross-examination, defendant testified that he did not recall ever telling Elizabeth he wanted to have sex with her. Nor did he recall telling Morgan Hill Police Officer Wayne Bell that he had told Elizabeth several times that he wanted to have sex.

6

He also denied that he told Officer Bell that after he was on top of Elizabeth, he told her he wanted to have sex.

Defendant testified that Elizabeth had told him several times before October 20, 2011, that they were not going to have a sexual relationship. He also admitted on cross-examination that he had told Officer Bell that he and Elizabeth had been talking for approximately 40 minutes, they began to wrestle in a friendly way, and Elizabeth then became angry. Although defendant denied telling Officer Bell that Elizabeth had called him a name during the encounter, he admitted in testimony that she had in the past called him "a fat old bald man." And he admitted that he did not tell Officer Bell that Elizabeth had pulled up her shirt. He also testified that he did not remember telling Officer Bell that he had touched Elizabeth's breast over her shirt.

### 2. *Other Defense Evidence*

Dr. Paul Herman, a forensic pathologist who spent a number of years working as a pathologist and who also worked in the Alameda County Coroner's Office, testified that he reviewed the report of Elizabeth's SART examination, including laboratory work and photographs that were taken. He termed the areas of redness in the labia minora to have been "very subtle." The red mark did not signify to Dr. Herman a specific type of trauma. He testified that the trauma could have resulted from a number of different things, including a blow, a scrape, or a reaction to chemicals. There was nothing about the red mark in the photograph that indicated to him that it was caused by penile penetration, but he nonetheless testified that the red mark could have resulted from penile penetration.

### C. Rebuttal Evidence

Officer Bell was one of the officers who responded to a dispatch call to defendant's apartment on Ciolino Street on the afternoon of October 20, 2011. There was no one home when Officer Bell arrived, but another officer located defendant at the intersection of Cosmo and Del Monte streets. Officer Bell spoke to defendant on the

7

street and later obtained a statement from him at the Morgan Hill Police Department booking facility.

Defendant told Officer Bell that Elizabeth had been staying at his apartment for approximately six weeks. He told the officer that he had on occasion told Elizabeth he wanted to become intimate with her, but they had never been intimate together. "He said, 'I wanted to, but she would never let me.' " Defendant also said he had asked Elizabeth to marry him. He told Officer Bell that on that day, when she arrived at the apartment, she was intoxicated and had mood swings of being happy and then "really mad." Defendant said they were "playing around . . . [and] they began to wrestle." He told the officer that Elizabeth's demeanor changed; "she became [very] angry and called him a fat old bald man." Defendant then said they had tripped over a chair and both fell down, with Elizabeth on her back and defendant on top of her with her legs wrapped around his waist. He had gotten an erection and asked Elizabeth if she wanted to have sex. He touched her breast over her shirt with his right hand. Elizabeth then told him to get off of her. Defendant did not tell Officer Bell that Elizabeth had raised her shirt and exposed her bra.

## II. *Evidence Related to Counts 3, 4 and 5 (Juanita Doe)*

Juanita Doe testified that defendant had been her neighbor for three years. She lost her job and was evicted, and in early 2012 moved into defendant's apartment. At approximately 3:00 p.m. on April 22, 2012—after she had been living in the apartment for approximately three months—defendant awakened her. He was at the door to the bedroom, and appeared to be angry at her because she had been asleep. She walked out of her room toward the kitchen. Defendant grabbed her right hand and pulled her forcefully from the hallway back to the kitchen. He then punched Juanita in the face more than once with a closed fist. She fell flat on her back on the floor, hitting her head. Defendant repeatedly kicked her in the stomach while she was on the floor.

8

Juanita got up, grabbed her phone and left the apartment. She went to a friend's house, and they eventually called the police. Juanita was taken by ambulance to St. Louise Hospital. She sustained injuries to her nose and lips. Her legs were bruised and she had scrapes on her knees. One side of her head was swollen, and her right wrist was broken. Juanita testified that as of the time of trial, she had residual injuries: her lips were scarred and she had no feeling on one side of her lips; her wrist remained swollen and painful; she had numbness in her right hand; and as to two of her fingers, she had only limited use.

Defendant testified that Juanita stayed off and on in defendant's apartment for approximately two months. He testified that on April 22, 2012, the two of them argued, and she threw several objects at him, including a glass bowl that struck him in the knee. He testified that at some point she had a piece of sharp glass in her hand, which defendant tried to take away by grabbing her arm. He then forcefully pushed her away with both hands. He testified that Juanita bent over and hit her face on the refrigerator. He did not strike or kick her. He said she then went into the bedroom and left the apartment.

PROCEDURAL BACKGROUND

Defendant was charged by information filed on August 10, 2012, with five felonies: rape by force, violence, duress, menace or fear (§ 261, subd. (a)(2); count 1); felony sexual battery (§§ 242-243.4, subd. (a); count 2); willful infliction of corporal injury on a cohabitant (§ 273.5, subd. (a); count 3); aggravated assault (§ 245, subd. (a)(4); count 4); and battery causing serious bodily injury (§§ 242-243, subd. (d); count 5). It was alleged that counts 1 and 2 involved the first victim, Elizabeth Doe, and that the offenses occurred on or about October 20, 2011. It was further alleged that counts 3 through 5 involved the second victim, Juanita Doe, and that those offenses were committed on or about April 22, 2012. It was further alleged as to counts 3 through 5 that defendant personally inflicted great bodily injury upon the victim under circumstances involving domestic violence (§§ 12022.7, subd. (e), 1203, subd. (e)(3)).

9

During trial, the information was amended to: (1) reflect that count 2 was for misdemeanor sexual battery (§§ 242-243.4, subd. (e)(1)); (2) correct the date alleged in count 4; [2] (3) delete the great bodily injury allegation (§§ 12022.7, subd. (e), 1203, subd. (e)(3)) as to count 5; and (4) allege as to count 5 that in committing the offense, defendant personally inflicted great bodily injury on another person (§§ 667, 1192.7).

A jury trial commenced on or about October 2, 2012. On October 17, the jury returned verdicts of not guilty of the charge of rape and of the lesser-included offense of assault with intent to commit rape (count 1). The jury convicted defendant of misdemeanor sexual battery (count 2), found defendant guilty as to counts 3, 4, and 5, and found true the great bodily injury enhancement allegations associated with counts 3 through 5.

On January 28, 2013, the court imposed a prison sentence of seven years based upon a middle-term sentence of three years for the count 3 conviction and a four-year term for the great bodily injury enhancement as to that count. It further imposed separate, concurrent seven-year sentences for the count 4 and count 5 convictions and the associated great bodily injury enhancements, but ordered the sentences for those counts stayed pursuant to section 654. The court also imposed a concurrent six-month sentence for the count 2 conviction, assessed a fine of $300 plus penalty assessments (§ 290.3), and ordered defendant to register as a sex offender pursuant to section 290.

---

[2] It was alleged in the information that the count 4 offense occurred on or about October 20, 2011, which appears to have been a typographical error corrected in the first amended information.

DISCUSSION

I.      *Claim of Instructional Error*

A.      Background and Contentions

Defendant argues on appeal that the court erred in failing to give an instruction under *Mayberry*, *supra*, 15 Cal.3d 143, that defendant's reasonable good faith belief that Elizabeth consented to sexual contact would also be a defense to the misdemeanor sexual battery charge. A *Mayberry* instruction was given by the court for the rape charged in count 1. Consistently with the instruction concerning the elements of rape (CALCRIM No. 1000), the court instructed the jury: "The defendant is not guilty of rape if he actually and reasonably believed that the woman consented to the intercourse. The People have the burden of proving beyond a reasonable doubt that the defendant did not actually and reasonably believe that the woman consented. If the People have not met this burden, you must find the defendant not guilty." The jury was also given a *Mayberry* instruction as to the lesser-included offense in count 1, because the court, in advising the jury of the elements of assault with intent to commit rape, referred to the instruction for the elements of rape (CALCRIM No. 1000). (See *People v. Dillon* (2009) 174 Cal.App.4th 1367, 1383 (*Dillon*) [where jury was given *Mayberry* instruction with CALCRIM No. 1045 for charge of forcible sexual penetration with foreign object, and jury was referred back to CALCRIM No. 1045 in CALCRIM No. 890 for lesser-included charge of assault with intent to commit sexual penetration by foreign object, jury was adequately instructed that *Mayberry* defense applied to lesser-included offense].) But the court did not give a *Mayberry* instruction for the misdemeanor sexual battery charged in count 2.

Defendant contends "there was substantial evidence that [defendant] had a[n] actual, reasonable belief that Elizabeth Doe consented to his touching of her breast." He argues the court erred by failing to give a *Mayberry* instruction for count 2, and that this error was prejudicial under the *Chapman* standard (*Chapman v. California* (1967) 386

11

U.S. 18 (*Chapman*)) because it cannot be concluded beyond a reasonable doubt that the error did not contribute to the verdict on that count.

B. Applicable Law Under *Mayberry*

The California Supreme Court in *Mayberry*, *supra*, 15 Cal.3d at page 155, held that a defendant's reasonable and good faith mistake of fact regarding a person's consent to sexual intercourse is a defense to rape. In *People v. Williams* (1992) 4 Cal.4th 354 (*Williams*)), the court explained the circumstances in which a court is required to give a *Mayberry* instruction in a case in which the defendant is charged with rape: "*Mayberry* is predicated on the notion that under section 26,[3] reasonable mistake of fact regarding consent is incompatible with the existence of wrongful intent. [Citations.] [¶] The *Mayberry* defense has two components, one subjective, and one objective. The subjective component asks whether the defendant honestly and in good faith, albeit mistakenly, believed that the victim consented to sexual intercourse. In order to satisfy this component, a defendant must adduce evidence of the victim's equivocal conduct on the basis of which he erroneously believed there was consent." (*Id.* at pp. 360-361, fn. omitted.) To satisfy the subjective component, there must be evidence, either direct or circumstantial, of the defendant's state of mind when he committed the offense. (*People v. Maury* (2003) 30 Cal.4th 342, 425 (*Maury*).) Secondly, "the defendant must satisfy the objective component, which asks whether the defendant's mistake regarding consent was reasonable under the circumstances. Thus, regardless of how strongly a defendant may subjectively believe a person has consented to sexual intercourse, that belief must be formed under circumstances society will tolerate as reasonable in order for the defendant

---

[3] "All persons are capable of committing crimes except those belonging to the following classes: [¶] . . . [¶] . . . [¶] Three–Persons who committed the act or made the omission charged under an ignorance or mistake of fact, which disproves any criminal intent." (§ 26.)

to have adduced substantial evidence giving rise to a *Mayberry* instruction. [Citations.]" (*Williams,* at p. 361.)

The California Supreme Court further instructed: "[I]n determining whether the *Mayberry* instruction should be given, the trial court must examine whether there is substantial evidence that the defendant honestly and reasonably, but mistakenly, believed that the victim consented to sexual intercourse." (*Williams*, *supra*, 4 Cal.4th at p. 361; see also *Mayberry*, *supra*, 15 Cal.3d at p. 157 [instruction must be given "when 'some evidence "deserving of . . . consideration" ' existed to support that contention"].) And, as with other defenses, "[a] trial court's duty to instruct, sua sponte, . . . arises ' "only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case." ' [Citations.]" (*Maury*, *supra*, 30 Cal.4th at p. 424.)

### C. Failure to Give *Mayberry* Instruction

In addressing defendant's claim of error, we will consider three questions. First, we will address whether a trial court must give a *Mayberry* instruction when a defendant is charged with misdemeanor sexual battery and "there is substantial evidence that the defendant honestly and reasonably, but mistakenly, believed that the victim consented to" (*Williams*, *supra*, 4 Cal.4th at p. 361) the defendant's touching of an intimate part of the victim. Second, we will determine whether, under the circumstances of this case, the trial court was required to give a *Mayberry* instruction for count 2. And third, if such an instruction was required but was not given, we will determine whether the error was prejudicial.[4]

---

[4] In a separate section of his appellate briefs, defendant asserts that, assuming the People claim that his claim of instructional error was forfeited because his trial counsel did not request a *Mayberry* instruction for the sexual battery claim, "defense counsel rendered ineffective assistance of counsel in failing to do so." We need not address these forfeiture/ineffective assistance of counsel issues for two reasons. First, the Attorney General does not assert that the claim of error was forfeited. Second, because a trial court

(continued)

13

*1.* Mayberry *Defense Applies to Misdemeanor Sexual Battery*

Defendant argues that the *Mayberry* defense of honest and reasonable belief of consent is applicable to the crime of misdemeanor sexual battery. In making this assertion, he acknowledges that there is no published authority addressing the question. The Attorney General concurs that there is no authority concerning the question, but that "in theory, the principles underlying the defense apply to a charge of sexual battery." We agree with the parties that although there is no published authority, the defendant in an appropriate case may assert the defense of mistaken but honest and reasonable belief of the victim's consent as a defense to misdemeanor sexual battery.

The crime of misdemeanor sexual battery includes as its elements the touching of "an intimate part of another person . . . against the will of the person touched . . . for the specific purpose of sexual arousal, sexual gratification, or sexual abuse." (§ 243.4, subd. (e).) " '[A]gainst the will' of the victim is synonymous with ' "without the victim's consent." ' [Citations.]" (*People v. Babaali* (2009) 171 Cal.App.4th 982, 995-996 (*Babaali*); see also *People v. Giardino* (2000) 82 Cal.App.4th 454, 460 (*Giardino*).) "A defendant therefore commits a sexual battery if he engages in an intimate non-consensual touching." (*Babaali*, at p. 996.) It is a specific intent crime. (*People v. Chavez* (2000) 84 Cal.App.4th 25, 29.)

The underlying rationale for a *Mayberry* defense to a forcible rape charge is that "under section 26, reasonable mistake of fact regarding consent is incompatible with the existence of wrongful intent." (*Williams*, *supra*, 4 Cal.4th at p. 360, fn. omitted.) The

---

has a sua sponte duty to give a *Mayberry* instruction where there is substantial evidence to support the defense and it is not inconsistent with the theory of the defendant's case (*Maury*, *supra*, 30 Cal.4th at p. 424), "the appellate claim is of a kind (e.g., failure to instruct sua sponte; erroneous instruction affecting defendant's substantial rights) that required no trial court action by the defendant to preserve it." (*People v. Boyer* (2006) 38 Cal.4th 412, 441, fn. 17.)

*Mayberry* defense has been applied to the crimes of forcible rape, attempted forcible rape, forcible sexual penetration with a foreign object, assault with intent to commit sexual penetration with a foreign object, kidnapping, and assault with intent to commit rape. (See *Mayberry*, *supra*, 15 Cal.3d at pp. 153-157 [rape, kidnapping]; *People v. Sojka* (2011) 196 Cal.App.4th 733, 737-739 (*Sojka*) [attempted rape]; *Dillon*, *supra*, 174 Cal.App.4th at pp. 1383-1384 [forcible sexual penetration with a foreign object, and assault with intent to commit sexual penetration with a foreign object]; *People v. Rivera* (1984) 157 Cal.App.3d 736, 741-743 [assault with intent to commit rape].) Each of these crimes has as an essential element the absence of the victim's consent. (See *People v. Lee* (2011) 51 Cal.4th 620, 641-642 [forcible rape under § 261, subd. (a)(2)]; *People v. King* (2010) 183 Cal.App.4th 1281, 1317-1318 [forcible sexual penetration with foreign object under § 289, subd. (a)]; *People v. Leal* (2009) 180 Cal.App.4th 782, 790-791 [assault with intent to commit rape under § 220]; *People v. Harris* (1979) 93 Cal.App.3d 103, 114 [kidnapping under § 207].) Like the aforementioned crimes, an essential element of misdemeanor sexual battery is that the offensive touching by the defendant is "against the will of the person touched" (§ 243.4, subd. (e)), or " ' "without the victim's consent." ' [Citations.]" (*Babaali*, *supra*, 171 Cal.App.4th at pp. 995-996.) Therefore, given the underlying rationale for permitting a defendant to assert a defense under *Mayberry*, we perceive of no basis for distinguishing misdemeanor sexual battery from the other crimes in which the instruction must be given. Thus, we hold that the defense of a mistaken but honest and reasonable belief of the victim's consent is available to defendants charged with sexual battery where there is substantial evidence to support the defense and it is not inconsistent with the defendant's theory of the case.

### 2. *Substantial Evidence Supported* Mayberry *Defense*

As noted, a *Mayberry* defense has a subjective and an objective component. (*Williams*, *supra*, 4 Cal.4th at pp. 360-361.) There must be substantial evidence of the victim's equivocal conduct that served as the basis for the defendant's good faith but

15

mistaken belief that the victim consented. (*Ibid.*) And the evidence must further support a conclusion that the defendant's subjective good faith belief was objectively reasonable under the circumstances. (*Id.* at p. 361.) It is only in the case where there is substantial evidence supporting both components of the defense that the court must give a *Mayberry* instruction. (*Williams*, at pp. 361-362; see also *People v. Salas* (2006) 37 Cal.4th 967, 982 (*Salas*) [defendant entitled to instruction on affirmative defense if it is supported by substantial evidence, i.e., "evidence sufficient for a reasonable jury to find in favor of the defendant," and defense is not inconsistent with defendant's theory of case].)

Here, there was evidence—adduced through defendant's testimony—that the sequence of events that led to defendant's touching of the victim's breast commenced with Elizabeth's poking of defendant with her finger while she was in the kitchen and then her tugging on his clothes in a "playful manner." According to defendant, shortly afterward, Elizabeth followed him to the living room and wrapped herself around him from behind. They then hugged. After he picked her up and they had accidentally fallen to the floor, Elizabeth told him her leg hurt and he got off of her. According to defendant, she then wrapped her legs around his waist and pulled him on top of her. After defendant unbuckled Elizabeth's belt and unsnapped her pants, thinking that she wanted to have sex, she placed her hands over her zipper, which defendant interpreted as her nonverbally telling him to stop. Not saying anything, according to defendant, Elizabeth then pulled her shirt over her bra. Defendant touched her breast over her bra. Defendant testified that at the time, he did not think he was doing anything that was unwanted. Elizabeth instructed defendant, " 'No. Stop. Get off.' " She seemed angry. Defendant said he complied immediately and Elizabeth left the apartment.

Defendant's testimony amounts to substantial evidence of equivocal conduct by Elizabeth leading to defendant's touching of her breast. (See *People v. Lewis* (2001) 25 Cal.4th 610, 646 (*Lewis*) ["testimony of a single witness, including the defendant, can constitute substantial evidence" thereby imposing on trial court a sua sponte duty to

16

instruct].)  That touching was the basis for the misdemeanor sexual assault charged as count 2.  Indeed, the Attorney General acknowledges there was substantial evidence of Elizabeth's equivocal conduct.  There was thus substantial evidence of the subjective component of the *Mayberry* defense.  (*Williams*, *supra*, 4 Cal.4th at pp. 360-361.) Furthermore, the same evidence was sufficient for a trier of fact to have concluded that defendant's subjective but mistaken belief that Elizabeth had consented to the touching of her breast was objectively reasonable under the circumstances.  (*Id.* at p. 361.)  "In deciding whether evidence is 'substantial' in this context, a court determines only its bare legal sufficiency, not its weight."  (*People v. Breverman* (1998) 19 Cal.4th 142, 177.)  In particular, "courts should not evaluate the credibility of witnesses, a task for the jury." (*Id.* at p. 162.)  Therefore, based upon defendant's testimony, there was substantial evidence to support defendant's *Mayberry* defense to count 2.

This conclusion is consistent with *Sojka*, *supra*, 196 Cal.App.4th 733.  There, the jury returned a guilty verdict on the charge of attempted forcible rape, a not-guilty verdict on a count of attempted forcible sexual penetration, and was unable to reach verdicts on several other charges.  (*Id.* at p. 736.)  The defendant argued the trial court erred by failing to give a *Mayberry* instruction for the attempted rape charge.  (*Id.* at p. 735.)  The appellate court reversed the judgment.

The appellate court rejected two assertions by the Attorney General:  (1) because the victim and the defendant in their testimony gave very different accounts of the sexual activity and the victim was clear that she at all times resisted the defendant, there was no basis for concluding the victim's conduct was equivocal; and (2) because the defendant had argued "he stopped his advances when the victim rejected his attempt to have intercourse there was no evidence that he misinterpreted the victim's conduct."  (*Sojka*, *supra*, 196 Cal.App.4th at p. 737.)  In concluding there was instructional error due to the failure to give a *Mayberry* instruction, the court held:  "We disagree with the Attorney General's first premise because one can only conclude the victim was unequivocally

17

resistant to intercourse by completely disregarding Sojka's testimony.  That is not the law.  The cases where courts have disregarded a defendant's testimony about a victim's behavior are limited to circumstances where the defendant's version would prove actual, not mistaken belief in, consent.  [Citations.]  . . . [N]either Sojka's testimony nor the victim's provides reasonable support for a theory based upon her actual consent to sexual intercourse. . . .  [T]he Attorney General's second point [is that b]ecause he stopped, the Attorney General says Sojka could not have been mistaken about the victim's consent.  But it is the events that led to the victim's rejection of Sojka's advance, not her rejection or his cessation, that are material to his possible mistaken belief.  Just because he stopped when she said no to intercourse does not make all that went before irrelevant or immaterial to the issue of consent."  (*Ibid.*)

Likewise, here, Elizabeth and defendant provided very different accounts of the events on the afternoon of October 20, 2011.  According to defendant, Elizabeth initiated "playful" physical contact and engaged in conduct that defendant might have reasonably interpreted as encouraging some level of physical intimacy.  And, again, according to defendant, after giving him a nonverbal signal to cease any advances to sexual intercourse, she pulled her shirt over her bra, an act which defendant could have interpreted as encouraging physical contact.  Therefore—as was the case in *Sojka*—the events, as described by defendant leading up to Elizabeth's ultimate rejection of his physical advances and her disengaging from the encounter, are relevant in determining whether defendant may have reasonably but mistakenly believed that Elizabeth had consented to the touching.  As we have noted, the "testimony of a single witness, including the defendant, can constitute substantial evidence" imposing on the trial court a sua sponte duty to instruct.  (See *Lewis*, *supra*, 25 Cal.4th at p. 646; *Sojka*, at pp. 737, 739.)  In light of defendant's testimony, the court erred in failing to give a *Mayberry* instruction relating to the charge of misdemeanor sexual battery.

18

### 3. *The Instructional Error Was Prejudicial*

Defendant argues that "[b]ecause this [instructional] error violated [his] federal constitutional rights, reversal of the judgment is required unless the reviewing court concludes beyond a reasonable doubt that the error did not contribute to the verdict." This is the *Chapman* standard of review for prejudicial error. (*Chapman*, *supra*, 386 U.S. at p. 24.) The Attorney General implicitly concedes that *Chapman* is the applicable standard but asserts that any instructional error was harmless beyond a reasonable doubt.

The California Supreme Court has not definitively resolved whether instructional error of the kind complained of here is governed by the *Chapman* standard of prejudice or the *Watson* standard (*People v. Watson* (1956) 46 Cal.2d 818 (*Watson*)) applicable to state law error, under which reversal is warranted if "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Id.* at p. 836; see *Salas*, *supra*, 37 Cal.4th at p. 984 [court assumed but did not hold that "more rigorous *Chapman* test applies," and found that even under that standard, the instructional error was harmless].) At least one Court of Appeal has held that the *Watson* standard applies to a court's erroneous failure to give a *Mayberry* instruction. (See *Sojka*, *supra*, 196 Cal.App.4th at p. 738 [applying *Watson* standard to determine if failure to give *Mayberry* instruction was prejudicial]; cf. *People v. Russell* (2006) 144 Cal.App.4th 1415, 1431 [error in failure to instruct on a mistake-of-fact defense governed by *Watson* standard].) We need not resolve which standard applies because the error was prejudicial under either standard.

The court specifically instructed the jury that it could not return a rape conviction if it found that defendant actually and reasonably believed Elizabeth had consented to intercourse. (That instruction also applied to the lesser included offense of assault with intent to commit rape.) In his argument to the jury on the rape charge, the prosecutor specifically referred to the *Mayberry* instruction, explaining that the defense was not available if defendant's subjective belief was unreasonable. By contrast, the prosecutor

19

argued that the evidence supported a guilty verdict on the misdemeanor sexual battery count *without mention* that a defendant's mistaken but good faith and reasonable belief that the victim consented would require acquittal. While making this argument, the prosecutor noted that the difference between rape and sexual battery is that rape is a general intent crime while sexual battery requires a specific intent (i.e., touching that was for defendant's sexual gratification).

Under these circumstances—including the fact that the jury acquitted defendant of rape and the lesser included offense of assault with intent to commit rape—the jury could have readily inferred that although a *Mayberry* defense was available for the rape count, defendant could not assert this same defense to the misdemeanor sexual battery charge. Thus, we find "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson*, *supra*, 46 Cal.2d at p. 836.) We also find the instructional error is also prejudicial under the more rigorous *Chapman* standard requiring reversal unless there is a finding "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (*Chapman*, *supra*, 386 U.S. at p. 24.)

## II. *Ineffective Assistance of Counsel Claim*

Defendant also claims that his trial counsel was prejudicially ineffective in failing to bring a motion for acquittal on the misdemeanor sexual battery charge. He argues that "the prosecutor presented no evidence in his case in chief that [defendant] ever touched Elizabeth's breast." He claims that had his trial counsel made a motion for acquittal when the prosecution rested its case, it would have been granted by the trial court. At oral argument, defendant's counsel also asserted that if we agree that defendant received prejudicially ineffective assistance of counsel, we must reverse with instructions that count 2 be dismissed because principles of double jeopardy apply to bar a retrial of that charge.

20

An ineffective assistance of counsel claim requires a showing that "counsel's action was, objectively considered, both deficient under prevailing professional norms and prejudicial." (*People v. Seaton* (2001) 26 Cal.4th 598, 666, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).) "[T]he burden is on the defendant to show (1) trial counsel failed to act in the manner to be expected of reasonably competent attorneys acting as diligent advocates and (2) it is reasonably probable that a more favorable determination would have resulted in the absence of counsel's failings." (*People v. Lewis* (1990) 50 Cal.3d 262, 288; see also *People v. Weaver* (2001) 26 Cal.4th 876, 961.) "Surmounting *Strickland*'s high bar is never an easy task. [Citations.]" (*Padilla v. Kentucky* (2010) 559 U.S. 356, 371.)

" 'In determining whether counsel's performance was deficient, a court must in general exercise deferential scrutiny . . .' and must 'view and assess the reasonableness of counsel's acts or omissions . . . under the circumstances as they stood at the time that counsel acted or failed to act.' [Citation.] Although deference is not abdication [citation], courts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight." (*People v. Scott* (1997) 15 Cal.4th 1188, 1212; see also *People v. Holt* (1997) 15 Cal.4th 619, 703 [appellate court "must in hindsight give great deference to counsel's tactical decisions"].) "[T]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' [Citation.]" (*People v. Lucas* (1995) 12 Cal.4th 415, 437 (*Lucas*), quoting *Strickland*, *supra*, 466 U.S. at p. 689; see also *People v. Vines* (2011) 51 Cal.4th 830, 876.)

Even assuming the prosecution did not present sufficient evidence in its case in chief to support the misdemeanor sexual battery charge, this does not mean defense counsel's failure to make a motion for acquittal constituted deficient performance. The record does not reveal why trial counsel elected not to make such a motion, but there may have been one or more strategic or tactical reasons for not having done so. For instance, defense counsel may have desired to submit the misdemeanor sexual battery charge to the

21

jury to give it an alternative to convicting defendant of the more serious rape charge. Or counsel may have reasoned that, had she made the motion for acquittal, the prosecution would successfully move to reopen its case to present additional evidence to support count 2. (*People v. Riley* (2010) 185 Cal.App.4th 754, 766-767 [trial court may permit prosecution to reopen its case after defendant makes a motion for acquittal].) These are two strategic or tactical reasons—among others that might have existed—that explain why defense counsel may have elected not to bring a motion for acquittal.

In evaluating deficient performance, if "the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged," we must reject the claim on appeal "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." (*People v. Pope* (1979) 23 Cal.3d 412, 426 (*Pope*), overruled on another ground, *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10.) Because the record does not show that defense counsel was asked for an explanation and failed to provide one, and this is not a case in which "there simply could be no satisfactory explanation" for counsel's decision not to move for acquittal, defendant has failed to meet his burden of establishing the first prong of his ineffective assistance of counsel claim.[5]

---

[5] Because defendant has failed to meet his burden of establishing deficient performance, we need not address whether he established the second element (prejudice). Likewise, we need not consider whether, as defendant asserts, a meritorious ineffective assistance claim would require reversal with an instruction that count 2 be dismissed.

*III.    Claimed Error in Abstract of Judgment*

In a supplemental letter brief, defendant argues that the abstract of judgment contains an error that requires correction.  Specifically, the abstract indicates that the seven-year sentence imposed for the count 4 conviction and enhancement was concurrent to the sentence for the count 3 conviction and enhancement.

As noted, the court imposed separate, seven-year sentences for the count 4 and count 5 convictions and their respective great bodily injury enhancements.  But the court ordered the sentences as to both counts stayed pursuant to section 654.  Although the abstract of judgment correctly notes that the sentence for count 5 is stayed, it incorrectly provides that the sentence for the count 4 conviction is to run concurrent to the sentence imposed on the count 3 conviction and enhancement.

Appellate courts may at any time order that abstracts of judgment be corrected where they are not an accurate reflection of the oral judgments of the sentencing court. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)  We will order that the abstract of judgment reflect that the sentence imposed on the count 4 conviction and the associated great bodily enhancement is stayed pursuant to section 654.

DISPOSITION

The judgment is reversed.  The cause is remanded for a retrial or other proceedings on the misdemeanor sexual battery charge alleged in count 2.  The abstract

23

of judgment shall be amended to reflect that the sentences previously imposed for the count 4 and count 5 convictions and their enhancements are stayed pursuant to section 654.

                                                                                   _____

                                                                                 Márquez, J.

WE CONCUR:

_____

Bamattre-Manoukian, Acting P.J.

_____

Grover, J.

Trial Court:                                    Santa Clara County
                                                Superior Court No.:  F1242829


Trial Judge:                                    The Honorable Edward F. Lee



Attorney for Defendant and Appellant           J. Wilder Lee
Earnest L. Andrews:                            under appointment by the Court of
                                                Appeal for Appellant




Attorneys for Plaintiff and Respondent         Kamala D. Harris,
The People:                                    Attorney General

                                                Dane R. Gillette,
                                                Chief Assistant Attorney General

                                                Gerald A. Engler,
                                                Senior Assistant Attorney General

                                                Rene A. Chacon,
                                                Supervising Deputy Attorney General

                                                Bruce Ortega,
                                                Deputy Attorney General