Filed 10/5/15  In re J.E. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re J.E., a Person Coming Under the Juvenile Court Law. | B263121 (Los Angeles County Super. Ct. No. NJ28105) |
| THE PEOPLE, Plaintiff and Respondent, v. J.E., Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John H. Ing, Judge.  Affirmed.

Lynette Gladd Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Stephanie C. Brenan and Toni R. Johns Estaville, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

In this juvenile proceeding, we reject appellant J.E.'s challenge to the sufficiency of the evidence to support the finding he raped his former girlfriend K.C. We affirm the trial court's dispositional judgment adjudicating appellant a ward of the court and removing him from his parents custody.

## FACTS AND PROCEDURE

Following a court trial, the court sustained an amended petition alleging that appellant committed the following offenses: rape of K.C., assault with a deadly weapon on K.C., assault by means likely to produce great bodily injury on K.C., two counts of forcible oral copulation of S.K. (another victim), and assault with a deadly weapon on S.K. On appeal, appellant challenges only the sufficiency of the evidence to support the rape of K.C. We summarize the relevant facts in accordance with the appropriate standard of review.

### 1. Background

When she was 14 years old, K.C. began dating appellant, and their relationship lasted from about January 2012 thru October 2012.[1] At the end of January 2012, appellant and K.C. started a consensual sexual relationship. In March, they started to argue and appellant became violent. Once, when K.C. started to walk away, appellant grabbed her hair and punched her in the chest causing her to fall backwards. He also kicked her stomach. On another day, appellant punched and shoved her and slammed her into a bathroom wall. K.C. did not remember specific dates and she believed that her use of marijuana, cocaine, and other pills may have affected her memory.

K.C. remembered one incident when appellant would not allow her to leave his apartment, and she ran into the bathroom and called a friend. Appellant broke down the bathroom door and dragged her out of the bathroom. Appellant threw a phone at her leg and bruised her leg. Appellant tried to choke K.C., upsetting K.C. and causing her to urinate in her pants. The friend whom K.C. had called entered appellant's bedroom and "grabbed him

---

[1]     K.C. did not report appellant's conduct until much later, and testified that she only reported it because her therapist insisted.

2

[(appellant)] off of me [(K.C.)]" K.C. had handprints on her neck. K.C.'s friend testified that when he entered appellant's bedroom he saw appellant on top of K.C. with his hands around her throat.

Sometime in June, appellant held K.C. with his left hand and used his right hand to hold a knife. The blade was approximately four or five inches long. Holding the knife against K.C., appellant said he wanted to slit her throat. He cut her throat. When he saw blood, he stopped. K.C. was scared. K.C. did not break up with appellant because she did not want to lose him.

During their relationship, K.C. often consented to sexual intercourse. When she did not want to have sex, K.C. would say "no" to appellant multiple times. Appellant and K.C. broke up at the end of April 2012 and started dating again in June 2012. K.C. had consensual sex with appellant when they were separated. Sometimes even when she did not want to have sexual intercourse, K.C. "gave in" and agreed to have sex because he "kept pushing [her] and saying please" and she "couldn't take it anymore." K.C. told appellant once or twice she did not want him to penetrate her but he did.

## 2. Rape of K.C.

K.C. remembered one incident when she did not want to have sex with appellant but he ignored her and penetrated her vagina with his penis. K.C. and appellant were both in bed. Appellant wanted to have sex. K.C. "kept saying no." Appellant grabbed K.C.'s arm and turned her over, climbed on top of her and "started . . . forcing it until it [(his penis)] finally went in." K.C. tried to resist when appellant turned her over onto her back. K.C. did not "give in" on this occasion; the sex was "[t]otally forced." K.C. did not try to resist when appellant put his penis in her vagina because "he was stronger than [her], and he held [her] down. There was no . . . getting out of it." Based on other incidents with appellant, K.C. was afraid of what appellant might do if she tried to stop him. K.C. believed "it was impossible for [her] to physically stop him." She did not want to "get hurt worse."

Defendant did not testify and none of the defense witnesses provided evidence relevant to this incident. Detective Daniele Moreale testified that defendant told her his sex

3

with K.C. was consensual.  She further testified that appellant admitted that he threatened to kill K.C.

As noted, the trial court sustained the petition.  This appeal followed.

## DISCUSSION

As we shall explain, appellant's challenge to the sufficiency of the evidence of the forcible rape of K.C. lacks merit.

"'The standard of proof in juvenile proceedings involving criminal acts is the same as the standard in adult criminal trials.  [Citation.]'  [Citation.]  'In considering the sufficiency of the evidence in a juvenile proceeding, the appellate court "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  We must presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence [citation] and we must make all reasonable inferences that support the finding of the juvenile court."'"  (*In re Gary F.* (2014) 226 Cal.App.4th 1076, 1080.)

Appellant was found to have committed the forcible rape of K.C. in violation of Penal Code section 261, subdivision (a)(2).  That statute provides:  "Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances:  [¶]  . . .  [¶]  (2) Where it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person of another."  The phrase "against a person's will" means without the victim's consent.  (*People v. Lee* (2011) 51 Cal.4th 620, 634, fn. 10.)

"'Actual consent must be distinguished from submission.  [A] victim's decision to submit to an attacker's sexual demands out of fear of bodily injury is not consent [citation] because the decision is not freely and voluntarily made [citation].'"  (*People v. Ireland* (2010) 188 Cal.App.4th 328, 336.)  A reasonable good faith belief in consent is a defense to rape.  (*Ibid.*; *People v. Sojka* (2011) 196 Cal.App.4th 733, 736.)  But victims are not required to communicate their lack of consent.  (*Ireland, supra*, at p. 338.)

Overwhelming evidence supported the finding that appellant forcibly raped K.C. K.C. testified that on one occasion, she did not want to have sex with appellant and repeatedly told him "no." Appellant grabbed her, turned her over, climbed on top of her, and forced his penis inside her vagina. K.C. testified that she did not "give in." The only reason that she did not resist more was that she was afraid of appellant and did not want to get hurt. She knew there was no "getting out of it." This evidence supported the finding that appellant forced his penis inside K.C.'s vagina without her consent. The fact that K.C. stopped resisting because she was afraid of appellant, does not show that K.C. consented to the sexual intercourse.

Appellant's arguments that there was insufficient evidence K.C. did not consent to sexual intercourse and insufficient evidence that she communicated the absence of consent lack merit. First, K.C. was not required to communicate the absence of consent. (*Ireland, supra*, 188 Cal.App.4th at p. 338.) But even if she had been required to do so, she repeatedly told him "no." She also tried to resist when he turned her on her back and climbed on top of her. The same evidence shows that she did not consent. Although she consented and acquiesced on other occasions, K.C. testified that on that occasion she clearly did not. Appellant's contrary arguments fail to interpret the evidence in the light most favorable to the trial court's findings, which is required by the standard of review.

## DISPOSTION

The judgment sustaining the petition and adjudicating appellant a ward of the court is affirmed.


                                                          FLIER, J.

WE CONCUR:

            RUBIN, Acting P. J.              OHTA, J.*

---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


5