Filed 3/18/16  P. v. Wahidi CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G049750 |
| v. | (Super. Ct. No. 09HF0720) |
| ABDULLAH WAHIDI, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Patrick Donahue, Judge.  Affirmed as modified.

Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

**INTRODUCTION**

A jury found Abdullah Wahidi guilty of one count (count 1) of attempted murder (Pen. Code, §§ 187, subd. (a), 664, subd. (a)) and one count (count 2) of assault with a deadly weapon (*id.*, § 245, subd. (a)(1)). As to count 1, the jury found true the enhancement allegations that Wahidi acted willfully, deliberately, and with premeditation (*id.*, § 664, subd. (a)) and that he used a dangerous and deadly weapon in the commission of the offense (*id.*, § 12022, subd. (b)(1)). As to both counts, the jury found true the enhancement allegation that Wahidi personally inflicted great bodily injury (*id.*, § 12022.7, subd. (a)).

The trial court sentenced Wahidi to an indeterminate term of seven years to life in prison on count 1, with a consecutive one-year term for the use of a dangerous and deadly weapon enhancement and a consecutive three-year term for infliction of great bodily injury enhancement. A sentence of four years in prison on count 2 was imposed and execution of sentence stayed pursuant to Penal Code section 654.

Wahidi makes two arguments on appeal. First, he argues the evidence was insufficient to support the jury's finding that he acted willfully, deliberately, and with premeditation in committing attempted murder. We conclude otherwise. Second, he argues his sentence on count 1 should be corrected to reflect a term of life with the possibility of parole. The Attorney General agrees the sentence on count 1 should be corrected in such manner, and our disposition will order the correction. We affirm the judgment, as modified to reflect the correct sentence.

**FACTS**

On the night of April 25, 2009, Andre Murillo and a few of his friends went to a party at the home of a college classmate. Murillo drank beer on the patio and in the garage. He then walked into the home and stood at the edge of an island in the

kitchen/dining room area. As Murillo stood in that area, an unfamiliar man, later identified as Wahidi, walked into the kitchen with two to four companions. Wahidi made eye contact with Murillo, and Murillo, who did not want to look away, made eye contact with Wahidi.

Murillo was trying to figure out whether Wahidi was "challenging" him and did not want to back away from a challenge. As Wahidi walked past Murillo and into the kitchen, they continued to stare at each other. When Wahidi and his companions reached the back of the kitchen, he and Murillo had not broken eye contact. Sensing there might be a problem, Murillo asked Wahidi, "are you good?" Wahidi said in response, "are you good" with an emphasis on the word "you." They loudly exchanged words. Murillo concluded there was a problem, as did other partygoers who were crowded in the kitchen.

Unbeknownst to Murillo, Wahidi had touched the area of his right hip, where he kept a pocketknife, which he used regularly throughout the day for work. Wahidi claimed he was tightening his belt to make his pants fit better in case he needed to run. Wahidi whispered something to one of his companions. The whispering made Murillo feel uncomfortable and he told Wahidi, "don't do that." Wahidi continued to whisper. The room quieted as tension rose. The host appeared and announced that if there was a problem, to "go outside."

Murillo asked Wahidi whether he "really wanted to do this," to which Wahidi said something and engaged in body language indicating he was willing to fight. Murillo walked outside expecting a fistfight. He did not have a weapon and did not expect Wahidi to use one. Wahidi followed him. While walking past Jonathan Fahey, Wahidi said to one of his friends something about a "four five," having "a blade," and "this guy is done" or "he's . . . done."

Outside, Murillo faced the door to the house and waited for Wahidi to emerge. Partygoers, some yelling "fight, fight," filed out the door. Wahidi came out of

3

the house and charged toward Murillo. Wahidi swung his left arm at Murillo but missed; Murillo grabbed Wahidi's shirt, and both fell to the ground. Onlookers formed a semicircle around the combatants. Murillo felt something hit his head. He grabbed Wahidi's legs, and while trying to subdue Wahidi, felt several jabs to the left side of his chest. One of the jabs made Murillo's body go numb. Murillo rolled over onto his back and said, "he stabbed me." Murillo had difficulty breathing and saw large amounts of blood.

Wahidi got up and, with a knife in his hand, ran off. His companions ran off with him. Noel Larkins, Terrence Worthy, and Neal Langston ran after Wahidi and his companions. Wahidi jumped into the rear seat of a waiting car. Langston reached the car, opened the driver's side rear door, and thrust his hand inside to grab one of the occupants. Langston felt a stinging sensation and pulled his hand back, allowing the car door to close. He had a small cut on his left hand which he believed had been inflicted by someone with a knife in the rear seat of the car. Langston kicked the car door before the car drove off. Worthy picked up a rock and threw it at the car.

Murillo was transported to a hospital, where he was treated by trauma surgeon Dr. Frank Nastanski. At trial, Dr. Nastanski testified Murillo had a three-centimeter-long stab wound to his left chest. Dr. Nastanski decided to operate on Murillo after noticing his decreased breath sounds on the left side of his chest. During surgery, Dr. Nastanski found internal bleeding in Murillo's lung and discovered the knife stab had nicked Murillo's pericardial sac. Murillo survived, but was in intensive care for five days and remained in the hospital for three and a half weeks, during which time he underwent four to five surgeries.

**DISCUSSION**

**I. The Evidence Supported the Jury's Finding That
Wahidi Acted Willfully, Deliberately, and with
Premeditation in Committing Attempted Murder.**

A. *Standard of Review*

Wahidi contends the evidence was insufficient to support the jury's finding that in committing attempted murder he acted willfully, deliberately, and with premeditation within the meaning of Penal Code section 664, subdivision (a). "Review on appeal of the sufficiency of the evidence supporting the finding of premeditated and deliberate murder involves consideration of the evidence presented and all logical inferences from that evidence in light of the legal definition of premeditation and deliberation . . . . Settled principles of appellate review require us to review the entire record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—from which a reasonable trier of fact could find that the defendant premeditated and deliberated beyond a reasonable doubt. [Citations.] The standard of review is the same in cases such as this where the People rely primarily on circumstantial evidence. [Citation.]" (*People v. Perez* (1992) 2 Cal.4th 1117, 1124.)

B. *Deliberate and Premeditated Murder: Definition and Requirements*

"A verdict of deliberate and premeditated first degree murder requires more than a showing of intent to kill. [Citation.] 'Deliberation' refers to careful weighing of considerations in forming a course of action; 'premeditation' means thought over in advance. (*People v. Bender* (1945) 27 Cal.2d 164, 183 . . . ; *People v. Thomas* (1945) 25 Cal. 2d 880, 900 . . . ; see *People v. Perez*[, *supra*,] 2 Cal.4th 1117, 1123-1124 . . . ; CALJIC No. 8.20 (6th ed. 1996).) 'The process of premeditation and deliberation does not require any extended period of time. "The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great

5

rapidity and cold, calculated judgment may be arrived at quickly. . . .” [Citations.]’ [Citation].” (*People v. Koontz* (2002) 27 Cal.4th 1041, 1080; see *People v. Solomon* (2010) 49 Cal.4th 792, 812.)

“The very definition of ‘premeditation’ encompasses the idea that a defendant thought about or considered the act beforehand.” (*People v. Pearson* (2013) 56 Cal.4th 393, 443.) “‘“‘[D]eliberate’ means ‘formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action.’ [Citation.]” [Citation.]’” (*People v. Houston* (2012) 54 Cal.4th 1186, 1216.) The definitions boil down to this: “‘An intentional killing is premeditated and deliberate if it occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse.’” (*People v. Pearson*, *supra*, at p. 443.)

C.  *The Evidence at Trial of Deliberation and Premeditation*

The evidence of deliberation and premeditation came from the experiences of two partygoers: Kingsley Costain and Fahey.

Costain’s testimony on the subject was brief. He was in the kitchen/dining area as tension mounted during the staredown between Wahidi and Murillo. Costain testified that while everyone was in the kitchen, Wahidi “kept shaking his head no, and he kept touching his waist, his hip.” Costain thought Wahidi “ha[d] something,” perhaps a knife or a gun.

Fahey was a good friend of Murillo. Fahey testified that Wahidi walked past him when leaving to go outside to confront Murillo. Fahey testified that, as Wahidi walked past him, “I heard [Wahidi] mention something to his friend about a four five. That’s what I heard. . . . I don’t know what that means exactly, but that’s what I heard. That’s what I thought I heard at least.” Fahey testified he also heard Wahidi say, “he’s— Andre’s done or something along those lines.”

After the incident, Fahey was interviewed by Irvine Police Officer Sean Bigley. The interview was recorded. In the interview, Fahey said he heard Wahidi say “I

6

have a blade in my back, in my pocket, this guy is done." When testifying at trial, Fahey did not have an independent recollection of making the statement about the blade, although he identified his voice on the recording of the interview. Fahey did have an independent recollection of Wahidi saying that Murillo ("this guy") "is done" or something along those lines. Bigley testified that Fahey said during the interview, "he heard the person who stabbed Mr. Murillo say, I have a blade in my back, in my pocket, this guy is done."

D. *The Evidence Supported the Jury's Finding.*

This testimony, viewed in the light most favorable to the judgment, provided sufficient evidence to support the jury's finding that Wahidi acted willfully, deliberately, and with premeditation. For reasons not disclosed in the record, Murillo and Wahidi confronted each other in the kitchen. They stared at each other and exchanged words. During this confrontation, Wahidi touched his right hip, where he kept a pocketknife. The jury could draw the inference that Wahidi did so because he intended to use the knife and wanted to be sure it was there and could be retrieved easily. The host told Murillo and Wahidi to go outside if they intended to fight. Murillo walked outside, anticipating a fistfight. Wahidi followed, and, as he passed Fahey, said to a companion, "this guy is done" and, according to Bigley's recollection of the interview with Fahey, "I have a blade in my back . . . pocket, this guy is done."

The entire encounter between Wahidi and Murillo did not last long. But "premeditation can occur in a brief period of time." (*People v. Perez*, *supra*, 2 Cal.4th at p. 1127.) "'"The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly. . . ." [Citations.]' [Citation.]" (*People v. Koontz*, *supra*, 27 Cal.4th at p. 1080.) The jury could draw the inference that, no later than the point at which Wahidi walked past Fahey, Wahidi had carefully weighed his course of

7

action, thought over in advance a decision to use the knife to kill Murillo, and for that reason made the comment "this guy is done."

*People v. Harris* (2008) 43 Cal.4th 1269 (*Harris*) supports affirming the jury's finding of deliberation and premeditation. In *Harris*, the victim and her daughter went to work at a donut shop. (*Id.* at p. 1277.) The victim left the shop to get supplies and, on returning, tapped on the door as a signal for her daughter to open it. (*Ibid.*) As the daughter approached the door, the victim saw the defendant standing at the service window and told her daughter to wait on him. The daughter took the defendant's order and, while preparing it, heard the victim scream. (*Ibid.*) The daughter ran to the door and saw the victim struggling with the defendant, who had a butcher knife. The victim collapsed and died. (*Ibid.*) She had a stab wound to the left side of her chest, four inches deep, which cut through a piece of one rib and completely through the heart. (*Ibid.*) The trial court, applying the sufficiency of the evidence standard, denied the defendant's motion for a judgment of acquittal to the charge of first degree murder. (*Id.* at p. 1286.)

The California Supreme Court upheld the trial court's decision. (*Harris*, *supra*, 43 Cal.4th at p. 1287.) The Supreme Court stated: "Here, defendant was armed with a knife and stabbed [the victim] without provocation directly in the heart with enough force to penetrate part of a rib and pierce entirely through the heart. In the time it took for [the daughter] to go from the door to the service window, and to take and prepare defendant's order, there was ample time for him to deliberate and premeditate before attacking [the victim]. Under these circumstances, we cannot say the jury could not reasonably have found defendant guilty of first degree murder." (*Ibid.*)

The evidence supporting deliberation and premeditation in this case is stronger than in *Harris* in two important respects. First, Wahidi's actions in touching his hip in the area where he kept his pocketknife and the comments Wahidi made as he walked past Fahey show that Wahidi did consider and reflect on his course of action before stabbing Murillo. Those actions and comments support the jury's determination

8

of deliberation and premeditation. In contrast, in *Harris*, the defendant attacked the victim without comment and for no apparent reason. Second, while the defendant in *Harris* acted without reason or provocation, Wahidi acted in response to the staring match and verbal confrontation with Murillo. The record does not disclose what provoked the confrontation, but we do know the confrontation in the kitchen provoked the fight outside, which resulted in the stabbing.

E. *Wahidi's Arguments*

Wahidi argues that, because he was not carrying a firearm, Fahey's testimony about him mentioning a "four five" made no sense. He points out that of the many people in the kitchen who were not aligned with him, none testified hearing the mention of a weapon. For those reasons, and because Fahey and Murillo were close friends, Wahidi asserts that Fahey's testimony lacked any credibility. The jury is the ultimate judge of witness credibility. (*People v. Vu* (2006) 143 Cal.App.4th 1009, 1029.) Fahey's testimony was not "inherently improbable"—i.e., physically impossible or patently false—such that a reviewing court could invade the jury's exclusive province of assessing witness credibility. (*People v. Mayberry* (1975) 15 Cal.3d 143, 150.) In addition, under the applicable substantial evidence standard of review, the testimony of a single witness is sufficient, even if there is a significant amount of contrary evidence. (*People v. Fuiava* (2012) 53 Cal.4th 622, 711.)

Wahidi argues there was no evidence to support the factors identified in *People v. Anderson* (1968) 70 Cal.2d 15, 25 (*Anderson*), for reviewing findings of deliberation and premeditation. In *Anderson*, *supra*, 70 Cal.2d at page 26, the California Supreme Court surveyed prior cases addressing the sufficiency of the evidence to support findings of deliberation and premeditation. Based on that survey, the court identified three categories of evidence relevant to deliberation and premeditation: (1) planning activity, (2) motive, and (3) manner of killing. (*Id.* at pp. 26-27.) The court stated: "Analysis of the cases will show that this court sustains verdicts of first degree murder

9

typically when there is evidence of all three types and otherwise requires at least extremely strong evidence of [planning] or evidence of [motive] in conjunction with [evidence of] either [planning] or [manner of killing]." (*Id.* at p. 27.)

Ever since the *Anderson* decision was handed down, the California Supreme Court repeatedly has cautioned that it sets forth "guidelines' that are merely "descriptive" (*People v. Perez*, *supra*, 2 Cal.4th at p. 1125; *People v. Mendoza* (2011) 52 Cal.4th 1056, 1069-1072 [court used the *Anderson* factors "as a guide"]) that the three factors or categories of evidence identified in *Anderson* are not "exhaustive," and that "*Anderson* does not require that these factors be present in some special combination" (*People v. Pride* (1992) 3 Cal.4th 195, 247). "The *Anderson* guidelines are 'descriptive, not normative,' and reflect the court's attempt 'to do no more than catalog common factors that had occurred in prior cases.' [Citation.] In developing these guidelines, the court did not redefine the requirements for proving premeditation and deliberation. [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1183.)

In this case, there was some evidence matching the *Anderson* guidelines. For whatever reason, Wahidi was angry at Murillo, thus supplying a motive, and Wahidi touched his waist area where he kept his pocketknife, thus supplying some evidence of planning activity. The critical point, however, is not whether there was evidence to fill each *Anderson* guideline, but that there was sufficient evidence to support a finding that Wahidi's actions were the "'result of preexisting thought and reflection rather than unconsidered or rash impulse.'" (*People v. Pearson*, *supra*, 56 Cal.4th at p. 443.)

## II. The Sentence on Count 1 Must Be Corrected.

On count 1, the trial court sentenced Wahidi to a prison term of seven years to life, and the abstract of judgment states, "7 years to Life" on count 1. Wahidi argues, and the Attorney General agrees, the correct sentence for premeditated attempted murder is an indeterminate term of life with the possibility of parole.

10

The sentence for premeditated attempted murder is indeed life with the possibility of parole.  (Pen. Code, § 664, subd. (a); see *People v. Jefferson* (1999) 21 Cal.4th 86, 92-93.)  A defendant sentenced to life in prison with the possibility of parole becomes eligible for parole after serving seven years.  (Pen. Code, § 3046, subd. (a)(1).)  While Penal Code section 3046 sets a minimum parole eligibility date (*People v. Salas* (2001) 89 Cal.App.4th 1275, 1283), the sentence is life with the possibility of parole (Pen. Code, § 664, subd. (a)).

We remand with directions to the trial court to prepare an amended abstract of judgment and amended sentencing minutes stating the sentence on count 1 is life in prison with the possibility of parole.  (See *People v. Robinson* (2014) 232 Cal.App.4th 69, 79.)

## DISPOSITION

The matter is remanded with directions to the trial court to prepare and issue an amended abstract of judgment and amended sentencing minutes stating the sentence on count 1 is life in prison with the possibility of parole, and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.  As modified, and in all other respects, the judgment is affirmed.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


THOMPSON, J.

11